540 So.2d 950 (1989)
Francis E. MIRE
v.
CITY OF LAKE CHARLES.
No. 88-CA-1576.
Supreme Court of Louisiana.
March 13, 1989.
Rehearing Denied April 20, 1989.
Gregory W. Belfour, City Atty., for appellant City of Lake Charles.
R. Gordon Kean, Jr., Brian F. Blackwell, Baton Rouge, for appellant, Louisiana Municipal Association.
*951 LEMMON, Justice.
This appeal presents the question of the constitutionality of a municipal ordinance which levied a graduated occupational license tax on attorneys conducting business in the City of Lake Charles. The principal issues are (1) whether the tax is a municipal income tax violative of La. Const. art. VII, § 4(C), and (2) whether the tax interferes with this court's exclusive right to regulate the practice of law by attorneys.
Facts
The Lake Charles City Council enacted Ordinance No. 8471 on June 3, 1987 under the authority of La.R.S. 47:341 et seq.[1] The ordinance revised the City's Code of Ordinances pertaining to occupational license taxes and levied the tax on a number of professions, including attorneys, which had previously been exempted from such taxes by La.R.S. 47:396.[2]
Section 12-1 of the ordinance levied an annual occupational license tax upon "each person pursuing or conducting a trade, profession, occupation, vocation, calling or business within the City of Lake Charles, Louisiana" which may be subject to an occupational license tax under state law. Section 12-7, which provides definitions of words and terms used in the ordinance, defined "business" as "any business, trade, profession, occupation, vocation or calling", and defined "person" as "an individual, firm, corporation, partnership, association, or other legal entity". See La.R.S. 47:342(1) and (9).
Section 12-27 fixed the amount of tax at the maximum amount collectable by a governing authority under La.R.S. 47:354-359. For attorneys, the tax was fixed at one-tenth of one per cent of the annual gross receipts of professional fees for services rendered, with a minimum of $50 and a maximum of $2,000. See La.R.S. 47:359 J.
Plaintiff, a practicing attorney in Lake Charles, filed the instant action seeking to declare the ordinance unconstitutional. He asserted that the tax was an unconstitutional municipal income tax and also infringed upon this court's exclusive authority to regulate the practice of law in Louisiana.
The trial judge rejected the latter contention, observing that nothing in this particular ordinance allows the City to prohibit an attorney from practicing law. Further noting that attorneys were subject to this tax prior to the exemption provided by the enactment of La.R.S. 47:396, the judge stated that the repeal of La.R.S. 47:396, along with the enactment of La.R.S. 47:359 J, evidenced a legislative intent to subject attorneys to an occupational license tax. Nevertheless, the judge declared the ordinance unconstitutional on the basis that Ordinance No. 8471 imposed an income tax in violation of La. Const. art. VII, § 4(C). He reasoned that a tax computed annually on a percentage of gross receipts for the previous year is an income tax.
The City and the Louisiana Municipal Association, which had intervened in the action, then appealed directly to this court. La. Const. art. V, § 5(D).
Prohibited Income Tax
Plaintiff contends that the occupational license tax based on the amount of the gross receipts is a disguised income tax prohibited by La. Const. art. VII, § 4(C), which provides:
"A political subdivision of the state shall not levy a severance tax, income tax, or tax on motor fuel." (emphasis added)
*952 The Louisiana Constitution vests the general power of taxation in the Legislature and specifically provides that the Legislature may enact a tax on net income. La. Const. art. VII, §§ 1 & 4(A).
Constitutional authority for imposition of an occupational license tax by the state dates back to the Louisiana Constitution of 1845. This authority was granted to political subdivisions in 1879 and is presently embodied in La. Const. art. VI, § 28, which provides:
"The governing authority of a local governmental subdivision may impose an occupational license tax not greater than that imposed by the state. Those who pay a municipal occupational license tax shall be exempt from a parish occupational license tax in the amount of the municipal tax. The governing authority of a local governmental subdivision may impose an occupational license tax greater than that imposed by the state when authorized by law enacted by the favorable vote of two-thirds of the elected members of each house of the legislature."
Under this authority many local governments levied occupational license taxes by adopting the state tax law by reference, but the tax was eventually discontinued on the state level. By Act 1986, No. 1017 (which enacted the present La.R.S. 47:341 that formed the basis for Ordinance No. 8471), local governmental subdivisions were vested with the authority to impose an occupational license tax, at the rates and on the terms established by the act.[3] Thus, plaintiff does not question the validity of a municipal occupational license tax, inasmuch as such a tax has specific constitutional and statutory authorization. He instead attacks the tax imposed by this particular ordinance on the basis of the constitutional prohibition against municipal income taxes.
Occupational license taxes are imposed on the activity or privilege of conducting a business or practicing a profession. Black's Law Dictionary 974 (5th ed. 1979) defines "occupation tax" as:
"A tax imposed upon an occupation or the prosecution of the business, trade, or profession; not a tax on property, or even the capital employed in the business, but an excise tax on the business itself; to be distinguished from a `license tax,' which is a fee or exaction for the privilege of engaging in the business, not for its prosecution. An occupation tax is [a] form of excise tax imposed upon persons for [the] privilege of carrying on [a] business, trade or occupation."[4]
A major distinction between an occupation tax and an income tax is that the former is an indirect tax and the latter is a direct tax. This court stated in Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958), that:
"[T]he terms `excise tax', `license tax' and `privilege tax' are synonymous and are used interchangeably to the extent *953 that they are all `indirect taxes' which are imposed upon the acts of persons, whereas a `direct tax' is one which is imposed upon the persons themselves or upon the property owned by them.... [A] `license tax' is generally taken to have the limited meaning of a tax upon a person's business or occupation." (emphasis added)
Id. 108 So.2d at p. 116.
This court has held in a number of cases that a municipal business or occupation tax is a tax upon the activity in a particular calling or business and is not a tax upon the property involved in the business. In Merriam v. City of New Orleans, 14 La. Ann. 318 (La.1859), a license tax on every keeper of a billiard parlor, measured by the number of tables, was held not to be a tax on the table itself, but a license tax upon the particular calling or business of operating a billiard table for public use. In Hodgson v. City of New Orleans, 21 La. Ann. 301 (La.1869), a tax on the business of operating a storage warehouse was determined not to be a tax upon the warehouse itself. In State v. Heymann, 178 La. 479, 151 So. 901 (1933), the court held that a tax on the business of operating an office building, computed at one-tenth of one per cent of the gross revenues therefrom, was neither a direct tax upon the property nor an income tax on revenues from rental of property not employed in any business.
Other jurisdictions have reached similar conclusions in distinguishing between occupation taxes based on gross receipts and income taxes. In Kansas City v. Graybar Electric Co., 485 S.W.2d 38 (Mo.1972), the court held that the Kansas City occupational license tax was a tax on the privilege of conducting a business in the city, and was not a tax on property or income, noting that fixing of the tax based on gross receipts was merely a means to calculate the tax. In Langston v. City of Danville, 189 Va. 603, 54 S.E.2d 101 (1949), the court held that an annual license tax on certain professions, businesses and occupations, measured by the gross receipts for the preceeding year, was a tax on the privilege of conducting a business or practicing a profession and was not a tax on the income derived from such business or profession. In Weekes v. City of Oakland, 21 Cal.3d 386, 146 Cal.Rptr. 558, 579 P.2d 449 (1978), a suit attacking a gross receipts occupation tax imposed upon all persons employed within the city, the court held that the tax was not a statutorily prohibited municipal tax upon income, but a tax upon the privilege of doing business. In Franklin v. Peterson, 87 Cal.App.2d 727, 197 P.2d 788 (1948), a suit by an attorney attacking a gross receipts occupation tax, the court stated that "a long line of decisions rendered in this state has sustained the validity of gross receipt taxes, and furthermore, a gross receipts occupation tax is not an income tax". Id. 197 P.2d at 792. In Town of Hackleburg v. Northwest Alabama Gas District, 277 Ala. 355, 170 So.2d 792 (1964), the court recognized the distinction between an occupational license tax and an income tax, stating that the tax at issue was "an excise tax on the privilege of operating a gas distribution business within the town of Hackleburg and is not a property or income tax". Id. 170 So.2d at 794.
The fact that the occupation tax in the present case is calculated on the basis of annual gross receipts does not of itself transform this indirect tax on the business activity into a direct tax upon income.[5] In Davis v. Ogden City, 117 Utah 315, 215 P.2d 616 (1950), the court held that imposition of an occupation tax did not constitute imposition of an income tax simply because the amount of the tax was based on gross receipts. The court noted that "this is one of the permissible means a taxing unit may use in providing for greater equality and more uniformity in imposing the tax". Id. 215 P.2d at 624.
The tax levied by Ordinance No. 8471 is distinguishable from the municipal earnings tax involved in City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987). In *954 Scramuzza the earnings tax was a direct tax upon "the total wages, commissions, earnings, tips and/or salaries of an employee". The occupation tax levied by Ordinance No. 8471 is not a direct tax upon income of employees, but is an indirect tax on the activity and privilege of conducting a trade, business or profession within the City of Lake Charles. The fixing of the amount of the tax on the basis of gross receipts of the business, while perhaps providing for greater equality and uniformity, does not convert the indirect occupation tax into a direct income tax.[6]
Regulation of Practice of Law
Plaintiff contends that an occupation tax on lawyers unconstitutionally impinges on the Supreme Court's exclusive authority to regulate the practice of law. He further argues that since membership in the Louisiana State Bar Association is compulsory for attorneys and "an occupational tax is paid to the association" as dues, the state and its subdivisions have no right to impose an occupation tax.
Under its inherent judicial power and its original jurisdiction, the Supreme Court of Louisiana has exclusive authority to regulate the practice of law in the state. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). This authority includes the power to control admissions to the bar, to discipline its members, and to prescribe rules of professional conduct. The standards adopted by this court to govern the professional conduct of attorneys have the force and effect of substantive law. Succession of Cloud, 530 So.2d 1146 (La.1988). Legislative acts which tend to impede or frustrate the authority of this court to govern professional conduct of attorneys will be struck down. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987).
Nevertheless, a license to practice law does not confer immunity from taxation. The license to pursue the profession of an attorney does not exempt a person from the duties of citizenship such as sharing in the expenses of government. State ex rel. Paquet v. Fernandez, 49 La.Ann. 764, 21 So. 591 (1897). See also State v. Waples, 12 La.Ann. 343 (1857); State v. Fellowes, 12 La.Ann. 344 (1857); City of New Orleans v. Turpin, 13 La.Ann. 56 (1858); State v. King, 21 La.Ann. 201 (1869); and Mayor and Council of Alexandria v. White, 46 La.Ann. 449, 15 So.15 (1894).[7] Indeed, although this court's right to regulate the practice of law has long been recognized, occupational license taxes were imposed on attorneys for many years until the enactment of La.R.S. 47:396 exempted certain professions.
The critical question, however, is not whether the attorney or the gross revenues from his practice of his profession are exempt from taxation, but rather whether the taxing ordinance under consideration interferes with this court's exclusive authority to regulate the practice of law.
The City of Lake Charles cannot regulate the professional conduct of attorneys, but can impose taxes on attorneys in order to raise revenue. Ordinance No. 8471 is not a regulatory measure; it is a revenue raising measure.
The ordinance does not attempt to prohibit or to limit the practice of law or of any other profession, or to regulate the conduct of those who pursue the profession. *955 It simply requires persons pursuing certain professions within the City of Lake Charles to pay a tax on that activity. Section 12-11, the penalty provision, provides that the collector's remedy in the event of the taxpayer's failure to pay is to file a civil rule and obtain a money judgment.[8] See La.R.S. 47:351. The ordinance, therefore, has no regulatory effect upon the practice of law.
Admittedly, the ordinance has some effect on the conditions under which a person practices the profession. But not all legislation affecting the practice of law is prohibited. Only that legislation which interferes with or frustrates this court's authority to regulate the practice of law is invalid. A person who receives a license to practice law and who adheres to the Rules of Professional Conduct is not insulated thereby from the reach of other regulations of the conditions under which the license may be used. For example, a licensed attorney can only operate an office in an area zoned for such use. We therefore conclude that Ordinance No. 3471, like a zoning ordinance, does not prescribe qualifications for attorneys or impose other regulations which relate to standards for admission and conduct of attorneys, and does not in any why impede or frustrate this court's authority to regulate the practice of law.
Other states have reached the same conclusion as to statutes and ordinances which simply impose an occupation tax or license tax on attorneys. Robins v. City of Rome, 230 Ga. 901, 199 S.E.2d 802 (1973); Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793 (1954); Ingraham v. City of Miami, 388 So.2d 305 (Fla.App.1980); Salt Lake City v. Robbins, 550 P.2d 730 (Utah 1976); Lister v. City of Fort Smith, 199 Ark. 492, 134 S.W.2d 535 (1939); McCarthy v. Tucson, 26 Ariz. 311, 225 P. 329 (1924); Russo v. City of Tuscon, 20 Ariz.App. 401, 513 P.2d 690 (1973); City of Seattle v. Campbell, 27 Wash.App. 37, 611 P.2d 1347 (1980); Ex Parte Galusha, 184 Cal. 697, 195 P. 406 (1921); Lublin v. Brown, 168 Conn. 212, 362 A.2d 769 (1975). See Annot., 50 ALR 4th 467 (1986). In Harlen v. City of Helena, 676 P.2d 191 (Mont.1984), the court held that an ordinance levying a license fee on persons carrying on business in the City infringed on the court's authority to regulate the practice of law. However, the ordinance in the Harlen case prohibited carrying on the business without a license and authorized revocation of the license for violation of any ordinance or statute. There is no such prohibition of practice or regulation of conduct in Ordinance No. 8471.
Plaintiff further argues the collector could determine under Section 12-16 of the ordinance, which allows the collector to promulgate rules and regulations for enforcement of the ordinance and the collection of revenue, that an attorney would be unable to continue practicing law if the tax was not paid.[9]
The purpose of this ordinance is the collection of revenue. The penalty authorized by Section 12-11, as well as the powers granted to the collector of revenue under Section 12-16, do not purport to regulate the practice of law or to deprive an attorney of his entitlement to practice law, but *956 only to ensure his compliance with the tax measure. See City of Seattle v. Campbell, 27 Wash.App. 37, 611 P.2d 1347 (1980). These methods of ensuring compliance with the ordinance do not any more impede or frustrate this court's regulation of the legal profession than do the rules and regulations promulgated by the Internal Revenue Service.
Likewise, the provisions of Section 12-6 of the ordinance, which allow the collector to "audit and inspect all records of the taxpayer that would have any bearing upon the amount of taxes due", do not mean that an attorney will be required to violate the confidences of his client in contravention of the Rules of Professional Conduct, as plaintiff contends. Section 12-14 B(1) of the ordinance provides:
"The records and files of the collector or the records and files maintained pursuant to this article of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state".
Moreover, Section 12-14 B(4) provides that unlawful disclosure of such information shall constitute a misdemeandor. See also La.R.S. 47:349. The ordinance therefore ensures the confidentiality of client files.
Plaintiff also expresses concern that the City might levy the tax against out-of-town lawyers who pursue their professions in Lake Charles, but do not maintain an office in the City. The ordinance does not purport to tax attorneys who do not maintain an office in the City. If the City attempts to apply the ordinance in that manner, any adversely affected attorney may apply for relief at that time.
Plaintiff also contends that an attorney who maintains more than one office in the state might have to pay tax on the same income to more than one municipality. Section 12-13(B) of the ordinance provides that "the tax shall be computed on the basis of the schedules contained in this article according to the physical location of each place of business without regard to the location where the actual sale takes place or where a product or service is delivered or performed". However, La.R.S. 47:341 A, the enabling legislation, specifically limits the municipal government's authority to impose an occupational license tax to "any person conducting any business herein enumerated within the territorial jurisdiction of the muncipality." (emphasis added) Under the ordinance the City can only collect a tax on the taxpayer's gross revenues from the business which is located in the City, even if some of the professional services which secure revenues for that business are performed outside the City.
Finally, plaintiff contends that the maximum and minimum tax rates result in a higher tax on sole practitioners and small firms than on larger firms, thus discriminating against the small practitioners in violation of the due process and equal protection clauses of the state and federal constitutions. There is no method of taxation that is absolutely equal and uniform. Moreover, this is not a tax on income, but on all businesses operated in the City, and the method for computing this tax based on annual gross receipts of the business is not unreasonably discriminatory or oppressive and does not constitute an abuse of the taxing power. See Davis v. Ogden City, 117 Utah 315, 215 P.2d 616 (1950).
For these reasons, the judgment of the district court is reversed, and plaintiff's suit is dismissed at his cost.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The inherent judicial power of the Louisiana Supreme Court includes regulation of the practice of law by attorneys. These municipal taxes are unconstitutional because they impinge on that exclusive authority.
The 1974 Louisiana Constitution gives the Supreme Court general supervisory jurisdiction over all other courts and exclusive original jurisdiction of disciplinary proceedings *957 against members of the bar.[1] "Under its inherent judicial power and its original jurisdiction this Court has the supreme authority to regulate the practice of law by court rules or by adjudication as cases may arise."[2]
The authority to regulate the practice of law had been vested in the Supreme Court by previous constitutions.[3] "The Supreme Court has a duty ... to regulate the practice of law."[4] This duty has three sources: it is an inherent power necessary to the Supreme Court's judicial function; it is essential to a division of powers between the executive, legislative, and judicial branches; and it is a constitutional mandate.
Prior to the incorporation of the Louisiana State Bar Association, membership in the bar association was not required for the practice of law. In 1941, the Louisiana Supreme Court exercised its inherent power to regulate the practice of law and control membership in the bar of the state by organizing the Louisiana State Bar Association as an agency of the court.[5] Attorneys were required to be members of the bar and pay annual dues.
Before the Louisiana Supreme Court, through the bar association, had imposed annual dues on the practice of law, the state collected an occupational tax from attorneys. A series of cases found the taxes valid: State v. Waples, 12 La.Ann. 343 (1857); State v. Fellowes, 12 La.Ann. 344 (1857); State v. King, 21 La.Ann. 201 (1869). These cases are distinguished from the present litigation because they preceded organization of the integrated bar association with mandatory membership and dues.
The intrusion of these municipal tax schemes into the authority of the Supreme Court over the practice of law would give rise to many problems.
Granting each municipality and each parish in the State the authority to regulate the practice of law through progressive taxation[6] raises the probability of chaotic, confusing, conflicting and overlapping rules applying to Louisiana lawyers.
The majority erroneously assumes that the taxing authority only extends to those attorneys whose offices are located within the territorial limits of the municipalities. However, LSA-R.S. 47:341 allows any Louisiana municipality or parish to impose a license tax on any person conducting business within its territorial jurisdiction. Business is broadly defined by LSA-R.S. 47:342 as "any business, trade, profession, occupation, vocation, or calling."[7] A person is "an individual, firm, corporation, partnership, association, or other legal entity."[8]
*958 The tax is imposed on persons, which can be an individual or a legal entity, and the definition of a business includes any profession. Thus, each person and each "place of business" is apparently subject to the tax.[9] Prior Louisiana jurisprudence has allowed an occupational license tax to be levied even though there was no residence or place of business within the territorial limits of the taxing authority. Collector of Revenue v. Wells Fargo, 393 So. 2d 1244 (La.1981).
The Third Circuit Court of Appeal, which has appellate jurisdiction over twenty-one parishes, sits in Lake Charles, as does the United States District Court for the Western District of Louisiana. These municipal tax assessments against nonlocal lawyers practicing in those courts would penalize their clients.
The United States Supreme Court has held that a federal court rule barring practice by a member of the Louisiana Bar without a residence or office in Louisiana was unnecessary, arbitrary, and irrational. Frazier v. Heebe, 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). Heebe did not reach the constitutional issues. In regard to the financial and administrative burden imposed on nonresident counsel, the United States Supreme Court noted:
"From the lawyer's standpoint, he or she will be at a significant disadvantage in attracting clients. Clients would have to be willing to provide compensation for the necessary association with a local lawyer who will duplicate the principal lawyer's efforts. The effect of such a rule is to drive up the cost of litigation and to steer business almost exclusively to the in-state bar. A client may have a number of excellent reasons to select a nonlocal lawyer: his or her regular lawyer most familiar with the legal issues may be nonlocal; a nonresident lawyer may practice a specialty not available locally; or a client may be involved in an unpopular cause with which local lawyers are reluctant to be associated."[10]
These observations are equally pertinent if counsel within this state should suffer multiple and duplicitous taxation whenever they cross a municipal or parish line.
Because the tax is based on gross receipts, the tax collector is permitted to audit the financial records of any person or business subject to the tax "for any reason".[11] This blanket authority gives dangerous access to the confidential records of attorneys. Moreover, the Louisiana Constitution specifically protects every person against unreasonable invasions of privacy.[12] In giving municipal tax collectors unbridled authority to audit an attorney's records "for any reason", i.e., for no reason, the ordinances permit an unreasonable invasion of privacy both as to the attorney and his or her clients. This provision is patently unconstitutional.
The title of LSA-R.S. 47:351 is: "Failure to pay tax; judgment prohibiting further pursuit of business". Without any demand or default, a delinquent taxpayer may be ruled into court, "out of term and in chambers" for a preferential hearing and a possible adverse money judgment.[13] The implication *959 is that nonpayment may result in not only a summary money judgment but revocation of the license to practice law.[14]
Revocation is generally the ultimate remedy for violation of licensing requirements. A municipal requirement of licensed practice for a lawyer already licensed to practice by the Louisiana Supreme Court conflicts with this court's authority.
The Supreme Court authority to regulate the practice of law extends to the admission and licensing of new practitioners. LSA-R.S. 37:213; In re Mundy, 202 La. 41, 11 So.2d 398 (1942). However, LSA-R.S. 47:344 prohibits any person to "commence any business within a parish or municipality which imposes an occupational license tax without first paying a tentative license tax." Since no person may begin business until a "tentative license tax" is paid,[15] an individual practitioner could be summarily cast in judgment if he or she undertook to argue a case in Lake Charles, White Castle, or Plaquemine without paying a "tentative license tax." There is a manifest conflict between the authority of the Supreme Court to admit and license new lawyers and the municipalities' requirement that "no person shall commence" the practice of law without payment of an occupational license fee.
Several state courts have rejected attorneys' arguments that municipal occupational license taxes interfere with regulation of the practice of law, but a number of those courts were not faced with a constitutional conflict. Others have found an unconstitutional interference with judicial authority over lawyers.
Illustrative is Harlen v. City of Helena, 676 P.2d 191 (Mont.1984), where a city ordinance assessing a license fee was declared invalid as to attorneys "because it infringes upon this [Montana Supreme] Court's constitutional authority to supervise and regulate attorneys and the practice of law."[16] As in Louisiana, the Montana Supreme Court's constitutional authority to regulate attorneys' professional conduct is exclusive.[17] Regulation of the legal profession is an inherent power fundamental to the separation of powers doctrine codified in that state's constitution. The Montana Supreme Court found the fact that a person could not practice law without first procuring a license and paying a fee was dispositive: it presented a clear conflict with the authority of the court to determine standards for admission to the profession.
The ordinances enacted by White Castle, Lake Charles and Plaquemine follow the enabling legislation and require an attorney to obtain a license before commencing practice within their boundaries. The enforcement provisions are sufficiently coercive to intrude into regulation of the profession.[18] This is particularly true when the tax is levied on "persons" who do not necessarily have a place of business in the area and the tax is a precondition for practice by licensed lawyers.
Although differing in some details, all three ordinances contain provisions which could determine how, where, or whether an attorney can practice law. Those determinations *960 are invalid encroachments on the Supreme Court's authority to regulate the practice of law. Lawyers as a class are not exempt from taxation, but regulation of the practice of law through a municipal tax is constitutionally prohibited.
In addition, these taxes violate the right to equal protection and are unconstitutional as graduated income taxes.[19]
I respectfully dissent.
NOTES
[1] As amended and reenacted by Acts 1986, No. 1017, La.R.S. 47:341 A provides:

"Any municipality or parish shall have the right to impose a license tax on any person conducting any business herein enumerated within the territorial jurisdiction of the municipality or parish at a rate which shall not exceed the maximum tax rates set forth in this Chapter, provided that the imposition of such license tax is approved by two-thirds of the elected members of the municipal or parochial governing authority and after affording the public an opportunity to comment at a minimum of three public hearings."
Act 1017 was a comprehensive revision of Chapter 3 of Subtitle II of Title 47. Chapter 3 deals with occupational license taxes.
[2] La.R.S. 47:396 was repealed by Acts 1986, No. 1017, which enacted La.R.S. 47:341 A.
[3] Act 1017 received the favorable vote of two-thirds of each house of the Legislature, as required by La. Const. art. VI, § 28 for local subdivisions to impose the tax at a rate higher than that imposed by the state.
[4] There is apparently some confusion between the terms "occupation tax" and "license tax". Black's defines the former as a tax on the prosecution of a business and the latter as a tax on the privilege of engaging in a business. In Davis v. Ogden City, 117 Utah 315, 215 P.2d 616 (1950), the court distinguished the terms, stating that an occupation tax is primarily intended to raise revenue by that method of taxation, while a license fee or tax is based upon police power and is primarily intended to regulate a particular business or calling. In its definition of "license fee or tax", Black's Law Dictionary 830 (5th ed. 1979) states that a license tax may include both a charge imposed under the police power for a license to conduct a particular business and a tax imposed upon a business for the sole purpose of raising revenue. Ballentine's Law Dictionary 736 (3d ed. 1969) distinguishes a license fee, a charge made for the issuance of a license, from a license tax which is imposed to raise revenue and not merely to defray the expense of issuing the license.

The tax in this case was designated an occupational license tax. Nevertheless, classification of a tax must be determined by its operational effect rather than by the descriptive language used in drafting the enactment. City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987). There is no doubt that the primary purpose and the operational effect of this tax was to raise revenue.
[5] La. Const. art. X, § 8 (1921) required that the occupational license tax imposed upon each person "pursuing any trade, profession, vocation, calling or business ... shall be classified and graded" as set out in other sections. (emphasis added)
[6] The tax in this case may further be distinguished from an income tax because it is not imposed on persons, but on occupations, professions and businesses, Weekes v. City of Oakland, 21 Cal.3d 386, 146 Cal.Rptr. 558, 579 P.2d 449 (1978), Thompson, J., dissenting. (Note that the tax in the Weekes case is similar to the tax in the Scramuzza case, and the two decisions may conflict.) Thus, an attorney who is employed by the government or by an insurance company or an oil company does not conduct a business and is not subject to this tax, but his earnings are subject to the state income tax. Moreover, the tax is not imposed on all income received by a person from any source whatsoever (including dividends, interest, rents, royalties, etc.), but only on the gross receipts from operating a business or practicing a profession.
[7] The cited cases were decided prior to the time the Louisiana bar became integrated by Acts 1940, No. 54, and membership in the Association became compulsory. The reasoning of those cases, however, is still applicable today. See In re Mundy, 202 La. 41, 11 So.2d 398 (1942).
[8] La.R.S. 47:401, which had authorized municipalities to prohibit operation of a business for failure to pay the tax, was repealed in 1986, when taxation of attorneys was authorized.

Although La.R.S. 47:344 prohibits a person from commencing business without first paying a tentative license tax, that provision is not incorporated in the Lake Charles ordinance. Even if it were, and if that portion were to be declared unconstitutional, the remainder of the ordinance could stand after the unconstitutional portion is severed.
[9] Section 12-16 of the ordinance provides as follows:

"The tax collector shall make and enforce all rules and regulations necessary for the proper, complete and equitable collection of the tax levied by this chapter and he may adopt different rules and regulations and forms for different classes or kinds of trades, professions, vocations, callings or businesses, uniform as to each class, if by doing so the collection of the full amount of taxes due under this chapter may be simplified and made more certain. The collector may make and publish reasonable rules and regulations, not inconsistent with law, for the enforcement of the provisions of this article and collection of the revenue hereunder."
[1] LSA-Const.1974, Art. V, § 5(A) and (B) state:

"(A) Supervisory Jurisdiction; Rule-Making Power; Assignment of Judges. The supreme court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative rules not in conflict with law and may assign a sitting or retired judge to any court. * * *
"(B) Original Jurisdiction. The supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar."
[2] Saucier v. Hayes Dairy Products, 373 So.2d 102, 109 (La.1979) (Dennis, J. dissenting from the opinion on original hearing). The authority preceding Saucier included: Louisiana State Bar Ass'n v. Edwins, 329 So.2d 437 (La.1976); Louisiana State Bar Ass'n v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Ex Parte Steckler, 179 La. 410, 154 So. 41 (1934), appeal dismissed 292 U.S. 610, 54 S.Ct. 781, 78 L.Ed. 1470.
[3] See e.g., Louisiana Const.1921, Art. II.
[4] City of Baton Rouge v. Stauffer Chemical, 500 So.2d 397, 400 (La.1987).
[5] "The Louisiana State Bar Association is created and regulated under the rule-making power of the Supreme Court of Louisiana...." LSA-R.S. 37:211.
[6] LSA-R.S. 47:359.J.
[7] LSA-R.S. 47:342 provides in pertinent part:

"For the purposes of this Chapter, unless the context clearly otherwise requires or unless otherwise defined in specific portions of the Chapter, the following words shall have the respective meanings ascribed to each in this Section.
"(1) Business. `Business' includes any business, trade, profession, occupation, vocation, or calling."
[8] LSA-R.S. 47:342(9) provides:

"(9) Person. `Person' includes any individual, firm, corporation, partnership, association or other legal entity."
[9] Compare LSA-R.S. 47:346, which requires a separate license for each place of business and LSA-R.S. 47:341 which taxes "any person".
[10] Frazier v. Heebe, [footnote 12] 482 U.S. at 651, 107 S.Ct. at 2614, 96 L.Ed.2d at 568, citing Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 281, 105 S.Ct. 1272, 1277, 84 L.Ed.2d 205 (1985).
[11] LSA-R.S. 47:350 B. provides:

"B. If the collector is not satisfied with the facts set forth in the application or for any reason desires to audit the books and records of the taxpayer, the collector or any of his authorized assistants may audit and inspect all records of the taxpayer that would have any bearing upon the amount of taxes due under this Chapter. * * *"
[12] LSA-Const.1974, Art. I, § 5.
[13] LSA-R.S. 47:351 provides:

"Failure to pay the tax levied by this Chapter shall ipso facto, without demand or putting in default, cause the tax, interest, penalties, and costs to become immediately delinquent, and the collector is hereby vested with authority, on motion in a court of competent jurisdiction, to take a rule on the delinquent taxpayer to show cause in not less than two or more than ten days, exclusive of holidays, why the delinquent taxpayer should not be ordered to pay the total amount due and owing under this Chapter. This rule may be tried out of term and in chambers and shall always be tried by preference. If the rule is made absolute, the order therein rendered shall be considered a judgment in favor of the municipality or parish."
[14] Even if there is no sanction which would prohibit practice, as argued by astute counsel for the City of Lake Charles, a non-paying lawyer would bear the stigma of practicing without a city license and of being known as a scofflaw.
[15] LSA-R.S. 47:344 provides in pertinent part:

"No person shall commence any business within a parish or municipality which imposes an occupational license tax without first paying a tenative license tax. * * *"
[16] 676 P.2d 191, 193.
[17] Harlen, supra, 676 P.2d 191, 193, citing Matter of Petitions of McCabe and Zeman, 168 Mont. 334, 339, 544 P.2d 825, 827-828 (1975).
[18] LSA-R.S. 47:350 D. states:

"Any intentional false statement as to any material facts in the application for a license under this Chapter shall constitute a misdemeanor, and any person convicted thereof shall be fined not more than two hundred dollars or imprisoned for not more than six months, or both."
[19] Art. VI, § 28 of the Louisiana Constitution permits the imposition of an occupational licensing tax by local governmental subdivisions, but a municipal income tax is unconstitutional under Art. VII, § 4(C).