22 So.2d 202

**LOUISIANA STATE DEPARTMENT OF AGRICULTURE v. SIBILLE.**

**No. 37474.**

Feb. 9, 1945.

Rehearing Denied April 30, 1945.

Eugene Stanley, Atty. Gen., A. M. Suth-on, Sp. Asst. Atty. Gen., Seth Lewis, Dist. Atty., of Opelousas, and Davidson & David-son, of Lafayette, for appellant.

A. V. Pavy and John W. Lewis, both of Opelousas, for appellees.

HAMITER, Justice.

The payment of taxes, levied under the provisions of Act 294 of 1942, is demanded in this action.

The mentioned statute provides for the creation of the Louisiana Sweet Potato Advertising Agency and, further, for the imposing of a tax, to be collected by the Louisiana State Department of Agriculture and Immigration, on all sweet potatoes shipped in Louisiana, it being at the rate of one cent per bushel from the effective date of the act until July 1, 1943, and there-

after at the rate of two cents per bushel. Specifically exempt from the tax, however, are sweet potatoes used on the farm where produced and those that are dehydrated, canned or processed in any form. The Agency, for the benefit of which the tax is imposed, is charged with the duty of planning and conducting a campaign for advertising and publicizing sweet potatoes and, by that means, promoting their increased consumption.

In its petition of this suit plaintiff, the Louisiana State Department of Agriculture and Immigration, alleges that "the defendant herein, Walter Sibille, operating under the name and style of Southern Sweet Potato Exchange, shipped certain sweet potatoes in the State of Louisiana between April 16, 1943, and April 27, 1943, on which potatoes there were due taxes in the amount of $37.24 * * *;" and "that due demand has been made upon the said Walter Sibille for the payment of said taxes to no avail." The prayer is for judgment in the named sum, together with legal interest, a penalty of 20%, and costs.

Defendant, in his answer, admits that he conducted operations and made shipments of sweet potatoes, under the name of Southern Sweet Potato Exchange, as alleged by plaintiff; but he denies that he is legally obligated for the payment of the taxes demanded. Supporting the denial are certain affirmative averments, contained in a special unconstitutionality plea attached to the answer, which read:

"That the act declared on by plaintiff, i.e. Act No. 294 of the Regular Session of the State of Louisiana for the year 1942, is unconstitutional, null, void and of no effect, for this, to-wit:

"(a) Said Act violates and is in derogation of Article Ten (10) Section One (1) of the Constitution of the State of Louisiana, in that the tax in question is not levied or collected 'for public purposes only,' but is wholly levied and collected for private purposes, or for the purposes other than 'public purposes;'

"(b) Said Act further violates and is in derogation of Article Ten (10) Section One (1) of the said Constitution, in that the tax is not levied and collected with uniformity 'upon the same class of subjects, etc;'

"(c) Said Act violates and is in derogation of Article Ten (10) Section Eight (8) of the Constitution of the State of Louisiana, in that it levies and collects a tax on those engaged in agricultural pursuits, and is, in effect, a disguised occupational license tax on an agricultural pursuit;

"(d) Said Act violates and is in derogation of Article Four (4) Section One (1) of the Constitution of the State of Louisiana, in that it provides for the withdrawal and disbursement of public moneys from the Treasury of the State of Louisiana without any specific appropriation made by law, and also undertakes to appropriate and disburse the proceeds of said tax for a longer period than two years;

"(e) Said Act violates and is in derogation of the Fourteenth Amendment to the Constitution of the United States and the Second Section of Article One (1) of the

Constitution of Louisiana, in that said Amendment and Section aforesaid provide that no person shall be deprived of his property without due process of law, and respondent would be so deprived if said Act be executed and enforced." (Italics theirs.)

Joining the defendant Sibille in his attack on the statute, and adopting all defenses and objections urged by him, are numerous intervenors who represent themselves to be "sweet potato buyers, growers, shippers, and dealers in the State of Louisiana". They, along with defendant, pray that Act 294 of 1942 be declared unconstitutional, null and void, and that plaintiff's suit be dismissed.

The district judge, following his hearing of evidence, rendered judgment in favor of defendant and intervenors, declaring the statute unconstitutional, null and void, and dismissing the suit. The ruling, as his written reasons for judgment disclose, was predicated on the conclusion that the tax violated in two particulars Article 10 Section 1 of the Louisiana Constitution.

Plaintiff perfected this appeal. When the case was called for a hearing in this court it was submitted by counsel for all parties on briefs and without oral arguments.

In their brief, counsel for appellees (defendant and intervenors) argue principally the two contentions or objections sustained by the trial judge and which are listed in their plea of unconstitutionality under paragraphs (a) and (b), these being that the act violates Article 10 Section 1 of the Louisiana Constitution, in that the

tax is not levied and collected for public purposes only and that it is not imposed with uniformity upon the same class of subjects. Also they discuss, but only to a slight extent, the objection contained in paragraph (c), which is that the act violates Article 10 Section 8 of the Louisiana Constitution in that it levies a tax on those engaged in agricultural pursuits. No argument whatever is advanced in favor of the objections listed in paragraphs (d) and (e) of their plea.

Article 10, Section 1 of our Constitution, on the provisions of which appellees predicate their first two objections, provides, in so far as pertinent, that:

"The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away; and all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only. * * * "

██ Under our well-established jurisprudence those constitutional provisions apply only to property taxes; they do not control the imposing of license or excise taxes. The latter are governed by Article 10, Section 8 of our Constitution. State v. American Railway Express Company, 159 La. 1001, 106 So. 544; Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341; State ex rel. Porterie v. H. L. Hunt, Inc., 182 La. 1073, 162 So. 777, 103 A.L.R. 9; State v. Cusimano, 187 La. 269, 174 So. 352. Therefore, it becomes necessary to determine whether Act 294 of 1942 levies a property or a license tax.

In three other states of the union statutes imposing a tax of a similar nature have been enacted and judicially considered. In Floyd Fruit Company v. Florida Citrus Commission, 128 Fla. 565, 175 So. 248, 112 A.L.R. 562, the statute assailed as being unconstitutional levied an advertising tax of a designated amount on each standard-packed box of citrus fruit grown in the State of Florida and provided that it should be due and payable and paid when the fruit is first handled in the primary channels of trade. The case of State ex rel. Graham v. Enking, 59 Idaho 321, 82 P.2d 649, involved a like statute affecting fruits and vegetables produced in the State of Idaho. In Miller v. Michigan State Apple Commission, 296 Mich. 248, 296 N.W. 245, the court interpreted a taxing statute relating to apples grown in the State of Michigan. In each of those cases it was held that the tax imposed is an excise or license tax, not a property tax; that it is levied solely upon the privilege of turning the products into the channels of commerce.

The distinction between an excise or license tax and a property tax was pointed out in Lionel's Cigar Store v. McFarland, supra. Considered there was a tax levied on the retailing of tobacco and tobacco products, and this court said [162 La. 956, 111 So. 344]:

"What characterizes this tax as a license tax, and not a property tax, is that it is collectable only from those who are engaged in the business of selling tobacco and tobacco products at retail and is measured in proportion to the retail selling price.

"Even though the retail selling price may be regarded as the value of the article, and the tax therefore as a proportion of the value, that alone would not make the tax a property tax. Gulf Refining Co. v. McFarland, Supervisor of Public Accounts, 154 La. 251, 97 So. 433. The incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectable from the owner of the property unless he is engaged in the business of selling it at retail, and that it is levied and collected then only in proportion, approximately, to the amount of the retail sales. * * *"

The imposition of the sweet potato tax, provided for in Act 294 of 1942, does not have as its basis and is not governed by the ownership of the product; in fact, the statute specifically states that it shall not apply to the sweet potatoes used on the farm where produced. The tax becomes due and collectable only when shipments take place; consequently, it is imposed on the privilege of shipping the commodity and of putting it into trade channels. From this it follows that the statute levies a license tax, not a property tax; and its legality is not to be tested in the light of the provisions of Section 1 of Article 10 of the Louisiana Constitution, which, under the above-cited authorities, apply only to property taxes.

Of course, aside from any constitutional limitation, it is a fundamental requirement under our form of government

and under the law of taxation that the power to tax can be validly exercised only for a public purpose. By reason of this requirement we consider appellees' contention that the tax on sweet potatoes is strictly for a private purpose—to benefit solely the growers and dealers of that product.

According to the evidence in the record, sweet potatoes, from the standpoint of acreage and value of production, constitutes the fourth largest, and one of the major, commercial crops of Louisiana, ranking only after sugar cane, rice and cotton. Corn is excepted from that classification since most of it is used on the farms where produced in feeding hogs, cattle and other animals. It is true that on the basis of percentage of acreage planted the sweet potato crop falls considerably behind the other three major commercial crops; nevertheless it is of great importance in the agricultural economy of this state as is attested by the fact that during a ten-year period it had an average annual planting of 104,000 acres with an average annual yield of 7,185,000 bushels. Furthermore, in this connection, consideration is to be given to the agricultural trend in the southern section of our nation which is to favor diversified farming, thereby avoiding a concentration on one crop and preventing serious loss to the farmer in particular and the entire citizenry generally when the one crop fails.

In enacting the statute in question, the Legislature, in Section 1 thereof, declared that "the production of sweet potatoes is one of the important agricultural industries of the State of Louisiana; that this act is passed to conserve and promote the prosperity and welfare of the State of Louisiana and of the sweet potato industry of the state and for fostering and promoting better methods of merchandising and advertising the sweet potatoes produced in this state. The purpose of this act is to expand the market and increase consumption of sweet potatoes by acquainting the general public with the health giving qualities and the food value of the sweet potatoes grown in the State of Louisiana, thereby promoting the general welfare of our people."

The declaration that the act was passed to promote the prosperity and welfare of the State of Louisiana and of its people is an expressed legislative recognition that the tax is imposed for a public benefit. To be sure that recognition is not conclusive; it could not make the tax one for public purpose if in fact it were for a private purpose. Since, however, the members of the Legislature are the direct representatives of all of the people of the state, their declaration certainly furnishes the presumption that the public generally is to be benefited by the levy.

Somewhat similar to the instant issue was that presented in State v. Wilson & Co., 179 La. 648, 154 So. 636, 639, wherein Act 17 of 1932 was attacked as being unconstitutional. In answering the contention that the tax levied by that statute was for a private purpose, this court said:

"The purpose of levying the tax, as appears from section 9 of the act, is to eradicate the cattle fever tick from the state, and its proceeds are to be devoted exclusively to that purpose. Such a pur-

pose is unmistakably a public purpose. It is such a purpose as redounds to the public welfare. It not only promotes the growth of an important industry, but tends to supply the people with healthy meats and milk for food. * * * The fact that a particular class may receive a special benefit from the tax does not affect the public character of the tax. * * *"

■ The proceeds of the sweet potato tax are not to be paid to the growers of that commodity or to any other individuals or groups that deal with it commercially; they are devoted exclusively to advertising the sweet potatoes, thus promoting the growth of an important and major industry. By that advertising, especially in states where very little is known of the value and usefulness of the sweet potato, there will result an increased consumption. This, in turn, will compel larger production and more sales throughout this state, as a consequence of which a greater prosperity will be realized not only by those directly interested but also by our entire citizenry. Therefore, since it redounds to the public welfare, the tax is for a public purpose.

Appellees' next contention, urged under Paragraph (c) of their unconstitutionality plea, is that the statute violates and is in derogation of the provisions of Article 10, Section 8 of the Constitution, in that it imposes an occupational license on those engaged in an agricultural pursuit. The mentioned article and section read in part: "License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession,

as the Legislature may deem proper, except * * * those engaged in * * * agricultural * * ·* pursuits * * *."

As above pointed out the tax levied by Act 294 of 1942 is a license tax, not a property tax; hence, the constitutional provisions just quoted must be considered in passing upon the statute's validity.

Section 5 of the statute provides that: "There is hereby imposed and levied a tax * * * on all sweet potatoes shipped in the State of Louisiana * * *. This tax shall apply on all shipments of sweet potatoes for which inspection certificates and tags of the Louisiana State Department of Agriculture and Immigration are issued * * *." Section 6 states that: "The tax imposed and levied hereunder shall be collected * * * from the shipper * * *." And in Section 2 we find:

" * * * 'shipper' shall mean any person, partnership, association, or corporation, engaged in the shipping of sweet potatoes or transporting sweet potatoes whether as owner, agent, or otherwise; 'shipment' shall be deemed to take place when the sweet potatoes are loaded within the state in a railroad car, boat, truck or other conveyance in which sweet potatoes are to be transported; * * *."

■ Counsel for plaintiff contend that because of the manner of its collection the tax is not imposed on those, exempted by the Constitution, who are engaged in agricultural pursuits, they arguing that: "The tax is not payable by the farmer or grower of the sweet potatoes, but is re-

quired by Section 6 of the statute to be collected by the Louisiana State Department of Agriculture and Immigration from the shipper." But that argument overlooks the fact that under the above-quoted terms and definitions a farmer or grower is a shipper, thus subject to the payment of the license tax, when he loads his truck or other conveyance with sweet potatoes and transports them to the market. And while so engaged in transporting or shipping the produce of his farm, he is engaged also in an agricultural pursuit.

In the case of State v. Hayes, 143 La. 39, 78 So. 143, 144, which involved a provision of the 1913 Constitution identical with that above quoted, it was stated:

"It has been decided by this court that a farmer who goes from place to place selling at retail the products of his farm is only pursuing his farming business and is not a peddler or hawker. He is engaged in an agricultural pursuit, which is, by the terms of article 229 of the Constitution, exempt from any license tax. Roy v. Schuff, 51 La.Ann. 86, 24 So. 788."

The cited case of Roy v. Schuff concerned Article 206 of the Constitution of 1879 which exempted all persons engaged in agricultural pursuits from the payment of a license tax. In refusing to compel defendant to pay a municipal license imposed on peddlers, the court said [51 La. Ann. 86, 24 So. 789]:

" * * * He was only carrying out the purpose he had in view in making the crop, —to sell it at retail or wholesale, as deemed most advantageous to him as a

farmer. The selling was an incident of farming, it may be said. It was a part of his pursuit as a farmer, and he thereby in no way became a peddler or a merchant. The exemption covers both the farmer and the sale by the farmer of that which his industry produces. Rice gathered in the field and placed in sacks is unquestionably an agricultural product. * * *"

Therefore, it must be held that Act 294 of 1942 is violative of Article 10, Section 8 of the Louisiana Constitution, in so far as it levies a tax on sweet potatoes shipped or transported by the grower himself.

But this does not mean that the act is not effective as to shippers of sweet potatoes other than the growers thereof. A shipper may be and frequently is a dealer in farm produce not grown by him, in which case he is not engaged in an agricultural pursuit but occupies the status of a commercial handler of the commodity. The defendant, who operates under the name of Southern Sweet Potato Exchange, appears to belong to that class.

Moreover, it is well recognized that if the constitutional parts of a statute are independent of the invalid portion, the former will be permitted to stand. Womack v. Varnado, 204 La. 1019, 16 So.2d 825; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49. This doctrine is especially true here in view of the following language of the saving clause of Section 9 of the statute:

"This act shall be liberally construed and if any part or portion thereof be declared

invalid, or the application thereof to any person, circumstance or thing is declared invalid, the validity of the remainder of the act and/or the applicability thereof to any person, circumstance or thing shall not be affected thereby."

■ Appellees' fourth complaint, listed in Paragraph (d) of their plea, is that the statute violates Article 4, Section 1. of the Louisiana Constitution, by providing for the disbursement of public money from the State Treasury without any specific appropriation and by undertaking to distribute the proceeds of the tax for a longer period than two years. The referred to constitutional provision reads in part: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law; nor shall any appropriation of money be made for a longer term than two years." According to Section 6 of the statute, the proceeds of the tax must be deposited in a special fund and all used by the Louisiana Sweet Potato Advertising Agency in conducting its publicizing and promotion campaign. By this method there is created a dedication, not an appropriation, and the mentioned constitutional provision is not violated. Board of Administrators of Charity Hospital v. Richhart, 139 La. 446, 71 So. 735; State ex rel. Porterie v. Charity Hospital of Louisiana, 182 La. 268, 161 So. 606.

■ Finally it is said that the statute violates the due process clauses of the Federal and State Constitutions. The same objection was made in. the Wilson case, as well as in the Florida, Idaho and Michigan cases, all cited supra, and in each of them the court held that no such violation had been occasioned.

Therefore, for the reasons assigned, Act 294 of 1942 is hereby declared unconstitutional, null and void in so far as it levies. and imposes a tax on farmers or the growers of sweet potatoes, and to that extent the judgment of the district court is affirmed; in all other respects the judgment is reversed and set aside, the plea of unconstitutionality is overruled, the interventions, except as to the growers, are dismissed, and there is now judgment in favor of plaintiff and against defendant in the sum of $37.24, with legal interest thereon from judicial demand until paid, plus 20% penalty on said principal amount. Defendant shall pay all costs of both courts.

O'NIELL, C. J., concurs in the decree holding the defendant liable for the tax and penalty, but is of the opinion that the court should not—in this case—adjudge the statute unconstitutional so far as it. levies or imposes the tax upon farmers or growers of sweet potatoes.

ROGERS, J., concurs in the above opinion of the Chief Justice.

O'NIELL, Chief Justice (dissenting from the rendering of a judgment on the question whether Act 294 of 1942 is unconstitutional so far as it may be said to levy the sweet potato license tax upon farmers)..

Act 294 of 1942 does not *in terms* levy the tax upon farmers or growers of sweet

potatoes. It merely levies the tax, as a license tax, upon shipments of sweet potatoes, or, as an occupation tax, upon the business of shipping sweet potatoes.

The defendant in this case did not formally claim the exemption allowed by Section 8 of Article X of the Constitution to "those engaged in * * * agricultural * * * pursuits", but pleaded that the statute violated that section of the Constitution, in that it levied the tax upon those engaged in agricultural pursuits. When the court found that the defendant was not engaged in an agricultural pursuit,—and hence was not entitled to the exemption allowed by Section 8 of Article X of the Constitution,—that should have put an end to the plea that the statute violated that section of the Constitution.

It might be argued that the defendant, although not engaged in an agricultural pursuit, had an interest in pleading and hence the right to plead that, if the statute violated Section 8 of Article X of the Constitution, the unconstitutionality of the statute in that respect rendered all of its provisions unconstitutional. Hence it might be argued that for that reason the defendant had an interest in pleading, and hence the right to plead—even though he was not engaged in an agricultural pursuit —that the statute did violate Section 8 of Article X of the Constitution. The obvious answer to that is that, when the court found that the statute might violate Section 8 of Article X of the Constitution without being otherwise unconstitutional, there was no necessity for deciding whether the stat-

ute did violate Section 8 of Article X of the Constitution.

If it be argued that the judgment declaring the statute "unconstitutional, null and void in so far as it levies and imposes a tax on farmers or the growers of sweet potatoes" is a judgment in favor of those interveners who are growers of sweet potatoes, the answer is that an intervener who joins a defendant in his defense of a suit has no right to inject into it a defense which is unavailing to the defendant.

Besides, the allegations of the petition of intervention in this case were never put at issue. The petition of intervention was not answered by either the plaintiff or the defendant; nor was a judgment taken by default—nor even a preliminary default entered—on the petition of intervention. No evidence was offered to support the allegation in the petition of intervention that the interveners—or some of them—were "growers" of sweet potatoes. Nor was any evidence offered to sustain any other allegation in the petition of intervention.

The rule which should forbid the court in this case to declare Act 294 of 1942 unconstitutional in so far as it might be construed to levy a tax on farmers or growers of sweet potatoes is that a court should never declare a statute unconstitutional unless it is necessary to do so in order to decide a matter in contest between the litigants. The rule is universally recognized. It is stated in Cooley's Constitutional Limitations, 8th Ed., Vol. 1, Ch. 7, Sec. II and III, pp. 338–340,—thus:

"II. Neither will a court, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. * * * In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable.

"III. Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it. * * * The statute is assumed to be valid, until some one complains whose rights it invades."

The judicial declaration from which I dissent, in this case, might be considered obiter dictum and hence unimportant if it appeared only in the opinion rendered by the court; but being a part of the court's decree is what makes the declaration objectionable. The plaintiff, against whom the decree to that extent is rendered, cannot get rid of it without asking for a rehearing; and yet a petition for a rehearing might seem out of place where—as in this case—the plaintiff has obtained a judgment for all that the plaintiff prayed for.