# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #030

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2018**, are as follows:

**BY GUIDRY, J.**:

2018-CA-0280
C/W
2018-CA-0285

BEER INDUSTRY LEAGUE OF LOUISIANA AND WINE AND SPIRITS FOUNDATION OF LOUISIANA, INC. v. THE CITY OF NEW ORLEANS AND NORMAN S. FOSTER, IN HIS OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE FOR THE CITY OF NEW ORLEANS (Parish of Orleans)

In this case, we are called upon to decide whether an ordinance of the City of New Orleans levying a gallonage tax based on volume upon dealers who handle high alcoholic content beverages is a valid exercise of its authority to levy and collect occupational license taxes within the meaning of La. Const. Art. VI, § 28, which permits a local governmental subdivision to impose an occupational license tax not greater than that imposed by the state. This case is before us pursuant to our appellate jurisdiction, La. Const. Art. V, § 5(D), because the ordinance has been declared unlawful and unconstitutional by the trial court. For the following reasons, we find the portion of the ordinance at issue is not an unconstitutional exercise of the City's taxing authority. We thus reverse the trial court's grant of summary judgment in favor of the plaintiffs, and remand to the trial court for further proceedings.

REVERSED AND REMANDED.

HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

No. 2018-CA-0280

BEER INDUSTRY LEAGUE OF LOUISIANA AND WINE
AND SPIRITS FOUNDATION OF LOUISIANA, INC.

VERSUS

THE CITY OF NEW ORLEANS AND NORMAN S. FOSTER, IN HIS
OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER AND
DIRECTOR OF FINANCE FOR THE CITY OF NEW ORLEANS

CONSOLIDATED WITH

No. 2018-CA-0285

LOUISIANA RESTAURANT ASSOCIATION, INC.

VERSUS

THE CITY OF NEW ORLEANS AND NORMAN S. FOSTER, IN HIS
OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER AND
DIRECTOR OF FINANCE FOR THE CITY OF NEW ORLEANS

ON APPEAL FROM THE ORLEANS CIVIL DISTRICT
COURT FOR THE PARISH OF ORLEANS

**GUIDRY, Justice**

In this case, we are called upon to decide whether an ordinance of the City of New Orleans levying a gallonage tax based on volume upon dealers who handle high alcoholic content beverages is a valid exercise of its authority to levy and collect occupational license taxes within the meaning of La. Const. Art. VI, § 28, which permits a local governmental subdivision to impose an occupational license tax not greater than that imposed by the state. This case is before us pursuant to our appellate jurisdiction, La. Const. Art. V, § 5(D), because the ordinance has been declared unlawful and unconstitutional by the trial court. For the following reasons, we find the portion of the ordinance at issue is not an unconstitutional exercise of the City's

1

taxing authority. We thus reverse the trial court's grant of summary judgment in favor of the plaintiffs, and remand to the trial court for further proceedings.

FACTS and PROCEDURAL HISTORY

On November 3, 2016, the New Orleans City Council passed an ordinance to "amend and reordain" Sections 10-501, 10-502, and 10-511 of the New Orleans Municipal Code relative to the imposition and collection of "an occupational license tax or excise tax on dealers of alcoholic beverages…." Ord. No. 27179, Nov. 3, 2016. The ordinance, which is set forth in full below, was to take effect on January 1, 2017.[1] *Id.*, § 2. The Beer Industry League of Louisiana and Wine and Spirits Foundation of Louisiana, Inc. filed a Petition for Injunctive Relief and Declaratory Judgment on December 22, 2016, against the defendants, the City of New Orleans and Norman S. Foster, then the Chief Financial Officer and the Director of Finance for the City of New Orleans.[2] The Louisiana Restaurant Association, Inc., on January 13, 2017, filed a similar petition, which was thereafter consolidated with the suit filed by the Beer Industry League and the Wine and Spirits Foundation, all of whom will be referred to as the plaintiffs. That same day the district court issued a temporary restraining order, which ordered the defendants "restrained, enjoined, and prohibited from attempting to levy, or imposing, or collecting fees or taxes pursuant to New Orleans Code of Ordinances Secs. 10-501 and 10-511." The district court also set a hearing on the preliminary injunction.

On January 30, 2017, the district court denied the preliminary injunction and dissolved the temporary restraining order previously issued. Thereafter, in April

---

[1] According to the plaintiffs' petitions, although the tax had existed for several years, it had not been previously enforced or collected.

[2] Though Ordinance No. 27179 also amended and reordained Section 10-502, with respect to low alcoholic content beverages, enforcement of that section has not been challenged by the defendants here.

2017, the City sent out a notice to certain alcohol dealers that it would begin enforcing the license taxes. The plaintiffs later filed a Motion to Escrow Funds seeking leave to deposit into the registry of the court any amounts collected pursuant to Section 10-501 et seq. The trial court granted the motion on August 30, 2017.

Ordinance No. 27179 provides as follows:

**AN ORDINANCE** to amend and reordain Sections 10-501, 10-502, and 10-511 of the Code of the City of New Orleans, relative to imposition and collection of an occupational license tax or excise tax on dealers of alcoholic beverages, and to otherwise provide with respect thereto.

**WHEREAS**, Article VI, Section 28 of the Louisiana Constitution authorizes a local governmental subdivision to impose an occupational license tax not greater than that imposed by the state; and

**WHEREAS**, Louisiana Revised Statutes 26:341 and 26:342 impose an excise or license tax on all beverages of high and low alcoholic content that are handled in the state; and

**WHEREAS**, the taxes imposed by the City of New Orleans are not greater than those imposed by the state; **NOW THEREFORE**

**SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS**, That Sections 10-501, 10-502, 10-511 of the Code of the City of New Orleans are hereby amended and reordained to read as follows:

**"Sec. 10-501. - Rates of tax on beverages of high alcoholic content.**

Excise or license taxes are imposed upon dealers of alcoholic beverages referred to in this article at the following prices and rates:

(1) Liquors and sparkling wines at the rate of $0.40 per standard wine gallon or fraction thereof.
(2) Still wines having an alcoholic content of 14 to 24 percent volume, at the rate of $0.10 per standard wine gallon or fraction thereof.
(3) Still wines having an alcoholic content of under 14 percent by volume, at the rate of $0.05 per standard wine gallon.
(4) Barrels containing not over 50 gallons for still wines containing 14 to 24 percent of alcohol by volume, at the rate of $0.10 per standard wine gallon in such containers.
(5) Kegs containing not over five gallons and still wines containing 14 to 24 percent alcohol by volume, at the rate of $0.10 per standard wine gallon in such containers.
(6) Barrels containing still wines having under 14 percent of alcohol by volume, at the rate of $0.05 per standard wine gallon in such containers.
(7) Kegs containing not over five gallons of still wines having under 14 percent of alcohol by volume, at the rate of $0.05 per standard wine gallon in such containers.
(8) Barrel, keg or bottle for still wines having an alcoholic content in excess of 24 percent by volume, at the rate of $0.40 per standard wine gallon.
(9) Beer, ale, stout, lager beer, porter and the like, together with any other beverages of high alcoholic content up to 24 percent of alcohol by volume shall take the same rate of tax as provided for in subsections (1) to (8) in this section.

**Sec. 10-502. - Additional tax on beverages of low alcoholic content.**

In addition to all license taxes presently imposed, or permitted to be imposed, there is hereby levied a tax on dealers of all beverages of low alcoholic content, of $1.50 per

3

standard 31-gallon barrel, or at a like rate of any other quantity or fractional parts of such beverages sold and consumed within the city, to be collected from dealers pursuant to Section 10-511 of this Division.

**Sec. 10-511. – Who is liable for tax.**

The taxes levied in Sections 10-501 and 10-502 of this Division shall be collected, as far as practicable, from the dealer who first handles the alcoholic beverages in the City. If for any reason the dealer who first handled the taxable alcoholic beverages has escaped payment of the taxes, those taxes shall be collected from any dealer in whose hands the taxable beverages are found."

**SECTION 2.** That the provisions of this ordinance shall become effective on January 1, 2017.

In their petitions, the plaintiffs asserted the City of New Orleans exceeded its authority under the Louisiana Constitution and statutes by imposing licensing fees and taxes upon the alcohol beverage industry in excess of the amounts allowed by law. The plaintiffs sought a judgment declaring Sections 10-501 and 10-511 of the Municipal Code unlawful and unenforceable.[3] The plaintiffs asserted La. R.S. 47:360(D)[4] and La. R.S. 26:491[5] prohibit the imposition of occupational license taxes or license or excise taxes on wholesale dealers of alcohol. The plaintiffs eventually moved for partial summary judgment, seeking a declaration that certain parts of the City's ordinance were unlawful and unenforceable, namely Sections 10-501 and 10-511. The plaintiffs asserted the tax sought to be collected by the City

---

[3] The plaintiffs also challenged the City's collection of permit fees pursuant to Sect. 10-122 of the Municipal Code, but that challenge is not a subject of this proceeding.

[4] La. R.S. 47:360(D) provides:

Wholesale dealers in certain alcoholic beverages. There shall be no license tax imposed, assessed, or collected under the provisions of this Chapter on any person engaged in the business of selling at wholesale, malt, vinous, spirituous, alcoholic, or intoxicating liquor containing more than six per centum of alcohol by volume, and beer, porter, ale, fruit juices, and wine containing more than one-half per centum of alcohol by volume.

[5] La. R.S. 26:491 provides:

No tax on the manufacture, distribution, transportation, or importation of alcoholic beverages shall be imposed by way of licenses, excise taxes, or otherwise by any police jury, municipality, or other local taxing authorities despite any special or general law to the contrary, except as expressly authorized by this Chapter.

4

was not an "occupational license tax" permitted under La. Const. Art. VI, § 28, which allows local governmental subdivisions to impose an occupational license tax not greater than that imposed by the state.[6] The plaintiffs argued the City's tax, which is referred to as the "Gallonage Tax,"[7] was in addition to the limit of the occupational license taxes permitted by La. R.S. 47:354.[8] The plaintiffs argued Art. VI, § 28 does not permit local governments to impose an "excise or license tax" as described in Sections 10-501 and 10-511. The plaintiffs also argued La. R.S. 26:492(D) specifically prohibits municipalities from imposing a local tax on beverages of high and low alcohol content other than those imposed therein.[9]

---

[6] La. Const. Art. VI, § 28 provides:

> The governing authority of a local governmental subdivision may impose an occupational license tax not greater than that imposed by the state. Those who pay a municipal occupational license tax shall be exempt from a parish occupational license tax in the amount of the municipal tax. The governing authority of a local governmental subdivision may impose an occupational license tax greater than that imposed by the state when authorized by law enacted by the favorable vote of two-thirds of the elected members of each house of the legislature.

[7] The corresponding state tax is called the "Gallonage Tax" located in Part III of Chapter 2 of Title 26 of the Louisiana Revised Statutes. *See* La. R.S. 26:341 *et seq.*

[8] La. R.S. 47:354 provides for an occupational license tax on retail dealers in merchandise, services, and rentals, and is "based on the total business activity" and determined per the provided table. For example, if gross sales are between $1,000,000 and $1,500,000, the annual license is $1,200.

[9] La. R.S. 47:492, entitled "Local gallonage tax on beverages of low alcoholic content," provides as follows (emphasis supplied):

> A. Any parish or municipality, through its local governing body, may impose a tax on beverages of low alcoholic content of not more than one dollar and fifty cents per standard barrel of thirty-one gallons. The tax shall be based on the amount of these beverages sold and consumed within the parish or municipality. Parishes and municipalities imposing this tax shall furnish the secretary a certified copy of the ordinance levying it. The secretary shall collect the tax in the same manner as he collects the state tax and shall make such additional rules as are necessary. He shall remit, each quarter, the amount of tax collected less the cost of collection, to the parishes and municipalities levying the tax. If the failure to pay the tax when due is explained to the satisfaction of the secretary, he may, with the approval of the Board of Tax Appeals, remit or waive payment of the whole or any part of any penalty due under the provisions of this Chapter.

> B. All records, tax returns, and other information pertaining to the collection of parish and municipal taxes and the amount of such taxes collected in each parish and municipality by each wholesale dealer shall be made available to any parish or municipal governing authority and trade organization consisting of beer wholesale

The City responded and also requested summary judgment asserting the excise or license taxes in Sections 10-501 and 10-511 were imposed in a manner "consistent with the Louisiana Constitution, state law, and the City's Home Rule Charter." The City argued that La. Const. Art. VI, § 28 permits a local governmental subdivision to impose an occupational license tax not greater than that imposed by the state. The City asserted the state in La. R.S. 26:341 and 26:342 imposes an excise or license tax on all beverages of high and low alcoholic content that are handled in the state. The City argued this gallonage tax was an occupational license tax, and that the City therefore could impose a similar occupational license tax, so long as it did not exceed the limits of the state's occupational license tax. The City noted that its tax is substantially less than that imposed by the state statute. The City also argued that its home rule charter preceded the 1974 Constitution, and thus it retained all the powers to tax that were not inconsistent with the constitution. The City argued it validly exercised its independent taxing authority under La. Const. Art. VI, § 4 and its home rule charter.

The trial court granted partial summary judgment in favor of the plaintiffs, declaring Section 10-501 unlawful, unconstitutional, and unenforceable. The trial court found that the state gallonage tax, as set forth in La. R.S. 26:341 and 26:342, and mirrored by the City in Sections 10-501 and 10-511, was not an occupational license tax. The trial court found that the term "occupational license tax" or "indirect" tax is reserved for taxes imposed on the privilege of engaging in a

---

dealers licensed by the state.

C. For accurately reporting and timely remitting the taxes due under the provisions of this Section, all taxpayers shall be allowed a discount of two percent of the amount of the tax otherwise due.

*D. Parishes and municipalities are prohibited from imposing any local tax on beverages of high or low alcohol content other than those imposed herein.*

particular activity, as opposed to a "direct" tax on designated property. The trial court reasoned that the gallonage tax is not exclusively imposed on the activity of being the first dealer in the state to handle a beverage with high alcohol content, but instead, the tax can be collected from any dealer in whose possession the beverage is found, if the first dealer escapes payment. The trial court reasoned that this provision "makes liability for the tax more incidental to the possession of property than to the activity of dealing with it." The trial court also rejected the City's reliance on La. Const. Art. VI, § 4, noting the provision allows the City to retain only those home rule powers that are not inconsistent with the Louisiana Constitution, and that the gallonage tax is inconsistent with the constitutional provision vesting exclusive taxing authority in the state, except as otherwise provided in the constitution.

The City now appeals the holding of the trial court. For the reasons set forth below, we reverse the trial court's partial summary judgment in favor of the plaintiffs and find that Section 10-501 is neither unconstitutional nor unlawful.

LAW and ANALYSIS

This case comes to us on a partial motion for summary judgment. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 3 (La. 11/29/06), 950 So.2d 544, 546, *see* La. C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 06–1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070.

In the instant case, the trial court has declared a portion of the City's ordinance to be unconstitutional and unlawful. The principles for determining the

constitutionality of an ordinance were summarized by this court in *Fransen v. City of New Orleans*, 08-0076, 08-0087 (La. 7/1/08), 988 So.2d 225. An ordinance, like a state statute, is presumed to be constitutional. *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515, 520 (La. 1983). In construing a municipal ordinance, courts use the same guidelines as those used in construing a state statute. *Cox Cable New Orleans, Inc. v. City of New Orleans*, 624 So.2d 890, 894 n. 5 (La. 1993). The presumption of a statute's constitutionality is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to taxation and public finance. *Caddo-Shreveport Sales and Use Tax Conmm'n v. Office of Motor Vehicles through Dep't of Public Safety and Corrections*, 97-2233, p. 5 (La. 4/14/98), 710 So.2d 776, 779. Unlike the federal constitution, Louisiana's constitutional provisions are not grants of power, but instead are limitations on the otherwise plenary power of the people. *State v. All Prop. and Cas. Ins. Carriers Authorized and Licensed to do Business in the State*, 06-2030, p. 6 (La. 8/25/06), 937 So.2d 313, 319; *Louisiana Dep't of Agric. and Forestry v. Sumrall*, 98-1587, p. 5-6 (La. 3/2/99), 728 So.2d 1254, 1259. Pursuant to Article VI of the Louisiana Constitution, a municipal authority governed by a home rule charter possesses powers, in affairs of local concern within its jurisdiction, that are as broad as those of the state, except when limited by the constitution, laws permitted by the constitution or its own home rule charter. La. Const. Art. VI, §§ 4-5; *Civil Serv. Comm'n of the City of New Orleans v. The City of New Orleans*, 02-1812, p. 4 (La. 9/9/03), 854 So.2d 322, 326. Because the City of New Orleans is governed by a home rule charter, principles for the determination of the constitutionality of a legislative enactment are equally applicable to the ordinance at issue here. *Fransen, supra*.

Statutes are presumed constitutional; therefore, the party challenging the statute bears the burden of clearly proving its unconstitutionality. *Louisiana Federation of Teachers v. State*, 13-2010 (La. 5/7/13), 118 So.3d 1033, 1048; *Wooley v. State Farm Fire and Cas. Ins. Co.*, 04-0882, p. 19 (La. 1/19/05), 893 So.2d 746, 762. A party seeking a declaration of unconstitutionality must show clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute in question. *Caddo-Shreveport Sales and Use Tax Comm'n*, 97-2233 at 5-6, 710 So.2d at 779; *Polk v. Edwards*, 626 So.2d 1128, 1132 (La. 1993). However, a constitutional limitation on legislative power may either be express or implied. *Caddo-Shreveport Sales and Use Tax Comm'n*, 97-2233 at 6, 710 So.2d at 779-80. When a constitutional challenge is made, the court must determine whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. *Board of Dir. of the Indus. Dev. Bd. of the City of Gonzales v. All Taxpayers, Property Owners*, 05-2298, p. 14 (La. 9/6/06), 938 So.2d 11, 20. The constitution is the supreme law to which all legislative acts must yield. *Caddo-Shreveport Sales and Use Tax Comm'n*, 97-2233 at 6, 710 So.2d at 780. When a statute conflicts with a constitutional provision, the statute must fall. *Id.*, 97-2233 at 6, 710 So.2d at 780. If a statute is susceptible of two constructions, one of which would render it unconstitutional, or raise grave constitutional questions, the court will adopt the interpretation of the statute that, without doing violence to its language, will maintain its constitutionality. *City of New Orleans v. La. Assessors' Retirement Fund*, 05-2548, p. 12 (La. 10/1/07), 986 So.2d 1, 12-13.

With these principles in mind, we turn to the issues before us. The City primarily contends the trial court erred in finding the gallonage tax is not an occupational license tax the City may constitutionally impose. Thus, we must decide whether the tax levied by the City on dealers who handle high alcohol content

9

beverages is an occupational license tax permitted under La. Const. Art. VI, § 28. The plaintiffs contend the gallonage tax at issue is not expressly allowed by either the constitution or the legislature, and therefore is unconstitutional.

La. Const. Art. VII, §1(A) provides that "Except as otherwise provided in this constitution, the power of taxation shall be vested in the legislature, shall never be surrendered, suspended, or contracted away, and shall be exercised for public purposes only." La. Const. Art. VII, § 30(A) provides that municipalities may exercise the power of taxation, but subject to the limitations elsewhere provided in the constitution under the authority granted by the legislature for parish, municipal, and other local purposes. However, La. Const. Art. VI, § 28 specifically allows municipalities to impose "an occupational license tax" no greater than that imposed by the state.

In amending and reordaining Sections 10-501 and 10-511, the City specifically referenced La. R.S. 26:341 and 26:342. The City and the plaintiffs disagree as to whether the gallonage tax set forth in the state statutes and the City's corresponding gallonage tax constitute occupational license taxes. If the state tax is an occupational license tax, then the City is authorized by the Louisiana Constitution to impose a similar tax under Art. VI, § 28. If the state gallonage tax is instead a tax directly on persons or property, then the City would be precluded from collecting it under La. Const. Art. VI, § 28. Accordingly, we must determine whether the state gallonage tax is an occupational license tax within the meaning of Art. VI, § 28(A).

In classifying a tax, courts look to its "operational effect rather than . . . the descriptive language used in drafting the enactment." *See City of New Orleans v. Scramuzza*, 507 So.2d 215 (La. 1987). Courts have generally defined an "occupational license tax" as one "imposed on the activity or privilege of conducting a business or practicing a profession," which constitutes an indirect tax on the acts

10

of persons. *See Mire v. City of Lake Charles*, 540 So.2d 950 (La. 1989); s*ee also Louisiana State Dept. of Agriculture v. Sibille*, 22 So.2d 202 (La. 1945); *Lionel's Cigar Store v. McFarland*, 111 So. 341 (La. 1927).

Chapter 3 of Title 47 of the Revised Statutes, entitled "Occupational License Tax," includes provisions relating to the imposition of license taxes on businesses, La. R.S. 47:341 *et seq*. La. R.S. 47:341, entitled "Imposition of tax; municipalities and parishes," provides that "[a]ny municipality or parish shall have the right to impose a license tax on any person conducting any business herein enumerated within the territorial jurisdiction of the municipality or parish at a rate which shall not exceed the maximum tax rates set forth in this Chapter…," that is, Chapter 3 of Title 47. The plaintiffs correctly point out that wholesale dealers of alcohol are expressly exempt from the license tax authorized in Title 47 by virtue of a specific exemption set forth in La. R.S. 47:360. Yet, as the City points out, this provision by its own language expressly limits the exemption to a "license tax imposed, assessed, or collected *under the provisions of this Chapter*," that is, Chapter 3 of Title 47. La. R.S. 47:360(D)(emphasis supplied). The City contends, and we agree, this language contemplates that wholesale alcohol dealers may be assessed occupational license taxes pursuant to other chapters of the Revised Statutes, *i.e.*, Chapter 2 of Title 26 governing alcoholic beverage control and taxation.

Indeed, Title 26 of the Revised Statutes, entitled "Alcoholic Beverage Control Law," separately regulates alcohol sales as well as permitting and licensing requirements, with licensing and revenue provisions specific to the alcohol industry.[10] La. R.S. 26:341and 26:344, found in Part III of Chapter 2, and entitled "Gallonage Tax," require alcohol "dealers" to pay an "excise or license tax" that is

---

[10] Parishes and municipalities may require annual permits and fees from dealers under La. R.S. 26:74, and the amounts of such permit fees are limited.

based on the volume of all high alcoholic content beverages "handled in Louisiana."[11] This tax is "in lieu of and exclusive of all other such state excise or license taxes." La. R.S. 26:343. As the City notes, there is no statutory exemption from these "excise or license taxes" for wholesale dealers of high alcoholic content beverages. "Dealer" for purposes of the Chapter is defined as "every person who manufactures alcoholic beverages within Louisiana for handling in Louisiana or who imports alcoholic beverages from any state, territory, possession, or foreign country for handling in Louisiana or who, not being able to prove that the tax levied by this Chapter has been previously paid, sells, offers for sale, of has in possession for sale or other handling beverages of high alcoholic content." La. R.S. 26:241(4). "Handle" is defined as "sell, use, distribute, store, consume, or otherwise handle." La. R.S. 26:241(6).

The City contends the gallonage tax is an occupational license tax because it indirectly taxes the handling of liquor and does not constitute a property tax upon the liquor itself. The gallonage tax expressly provides the tax is "upon dealers," rather than consumers or the product itself. The tax is likewise triggered by business conduct, the City avers, namely the professional handling of alcohol, and designates a specific class of merchants (dealers) who are responsible for payment. The City argues the statute makes clear the gallonage tax is a prerequisite to the privilege of participating in the liquor industry by stating that dealers who fail to furnish the bond required by La. R.S. 26:348 in connection with the payment of state gallonage taxes may be ruled into court and "ordered to cease business as a dealer." La. R.S. 26:348(B)(2). Furthermore, "[a]ny dealer who fails to file reports and pay the taxes

---

[11] As the plaintiffs point out, the legislature post-enactment of the City's ordinance revised La. R.S. 26:341 to remove the term "license" from the provision, Acts 2017, No. 212, eff. June 14, 2017. However, as we explain elsewhere, the title ascribed to a particular tax does not determine the nature of the tax; instead, we must examine its incidents, attributes, and operational effect. *See, e.g., Reed v. City of New Orleans*, 593 So.2d 368, 371 (La. 1992).

due . . . shall automatically be suspended from doing business and shall . . . forfeit his bond." La. R.S. 26:354(H).

The plaintiffs counter that the characteristics of the state gallonage tax demonstrate that it is a direct tax on property in the control of whomever has possession of it and not an occupational license tax upon the activities of the dealer in handling the property. The plaintiffs point out that the language of La. R.S. 26:341 provides that it is a tax "levied on all beverages of high alcoholic content handled in Louisiana." While it is collected by the "dealer who first handles the alcoholic beverages in Louisiana," La. R.S. 26:344, the plaintiffs note the gallonage tax is described as "taxes on beverages of high alcoholic content…." La. R.S. 26:343. As noted previously, see Note 11, supra, the plaintiffs contend the legislature's recent revision of La. R.S. 26:341 striking the term "license" from the statute evinces the legislative intent to differentiate gallonage taxes from occupational license taxes of the sort contained in Title 47 or contemplated by La. Const. Art. VI, § 28. Further, the plaintiffs argue, La. R.S. 26:491 explicitly provides: "No tax on the manufacture, distribution, transportation, or importation of alcoholic beverages shall be imposed by way of licenses, excise taxes, or otherwise by any police jury, municipality, or other local taxing authorities despite any special or general law to the contrary, except as expressly authorized by this Chapter." The plaintiffs contend that, other than for low alcoholic content beverages, *see* La. R.S. 26:492, there is no provision that authorizes municipalities to impose a tax similar to the state gallonage tax.

Occupational license tax is not defined in Art. VI, § 28; nor is it defined anywhere else in the Constitution or by statute. Therefore, we must examine the characteristics of the state gallonage tax to determine if it is a tax on activity or a tax on property. The nature of a tax is determined not by its title, but by its incidents, attributes, and operational effect. *Reed v. City of New Orleans*, 593 So.2d 368, 371

13

(La. 1992). The realities and substance of the tax must be examined, rather than its form. *Id.*; *City of New Orleans v. Scramuzza*, 507 So.2d 215, 218 (La. 1987). Courts have generally defined an "occupational license tax" as one "imposed on the *activity* or *privilege* of conducting a business or practicing a profession." *Mire v. City of Lake Charles*, 540 So.2d 950, 952 (La. 1989)(emphasis in original).

In *Radiofone, Inc. v. City of New Orleans*, 630 So.2d 694 (La. 1994), this court was called upon to determine whether a tax on the privilege of engaging in a telecommunications business was an occupational license tax, even though it was based on the gross receipts of the taxpayer and did not subject the defaulting taxpayer to an injunction of his taxable business pursuits. In determining the tax was an occupational license tax, this court explained:

> The term occupational license tax consistently has been used to refer to any tax on the activity or privilege of conducting a business or practicing a profession. *Mire v. City of Lake Charles*, 540 So.2d 950, 952 (La.1989); *Roberts v. City of Baton Rouge*, 236 La. 521, 108 So.2d 111 (1958); *Giamalva v. Cooper*, 217 La. 979, 47 So.2d 790 (1950); *Mouledoux v. Maestri*, 197 La. 525, 2 So.2d 11 (1941). Also, gross receipts taxes, whose amounts are calculated by reference to the total revenue, are generally considered to be occupational license taxes although economically they operate as sales taxes. Like other occupational license taxes, they are subject to constitutional restraints on the power to tax. *See* 4 Sands & Libonati, Local Government Law § 23.20 (1982).

*Radiofone*, 630 So.2d at 699-700.

In *Mire*, this court determined that a tax on the practice of law, based on gross earnings, was an occupational license tax, and not a prohibited income tax. The *Mire* court explained that an "occupational license tax" is one that is "imposed on the *activity* or *privilege* of conducting a business or practicing a profession." *Mire*, 540 So.2d at 952. The court quoted with approval the definition of an "occupation tax" found in Black's Law Dictionary 974 (5th ed. 1979):

> "A tax imposed upon an occupation or the prosecution of the business, trade, or profession; not a tax on property, or even the

> capital employed in the business, but an excise tax on the business itself; to be distinguished from a 'license tax,' which is a fee or exaction for the privilege of engaging in the business, not for its prosecution. **An occupation tax is [a] form of excise tax imposed upon persons for [the] privilege of carrying on [a] business, trade or occupation.**"

*Id.*, 540 So.2d at 952 (emphasis added). The court explained that "[a] major distinction between an occupation tax and an income tax is that the former is an indirect tax and the latter is a direct tax." *Id.*, 540 So.2d at 952. The *Mire* court observed that "the terms 'excise tax', 'license tax' and 'privilege tax' are synonymous and are used interchangeably to the extent that they are all 'indirect taxes' which are *imposed upon the acts of persons,* whereas a 'direct tax' is one which is *imposed upon the persons themselves or upon the property owned by them....*"). *Id.*, 540 So.2d at 952-53 (emphasis in original)(quoting *Roberts v. City of Baton Rouge,* 236 La. 521, 108 So.2d 111 (1958)). The *Mire* court cited a number of cases from this court holding that an occupation tax is one imposed upon the activity in a particular calling or business and is not a tax upon the property involved in the business. *Id.*, 549 So.2d at 953.[12]

Two additional cases from this court are on point with the issue presented here. In *Louisiana State Dept. of Agriculture v. Sibille*, 207 La. 877, 22 So.2d 202 (1945), this court found that a tax on all sweet potatoes shipped in Louisiana at the rate of two cents per bushel was a license tax and not a property tax, because it did not have as its basis, and was not governed by, the ownership of the product, but instead became due and collectable only when shipments took place. The *Sibille*

---

[12] In *Merriam v. City of New Orleans*, 14 La.Ann. 318 (La. 1859), a license tax on every keeper of a billiard parlor, measured by the number of tables, was held not to be a tax on the table itself, but a license tax upon the particular calling or business of operating a billiard table for public use. In *Hodgson v. City of New Orleans*, 21 La.Ann. 301 (La. 1869), a tax on the business of operating a storage warehouse was determined not to be a tax upon the warehouse itself. And in *State v. Heymann*, 178 La. 479, 151 So. 901 (1933), a tax on the business of operating an office building, computed at one-tenth of one per cent of the gross revenues therefrom, was neither a direct tax upon the property nor an income tax on revenues from rental of property not employed in any business.

court, relying on *Lionel's Cigar Store v. McFarland, supra*, reasoned that the tax levied a license tax and not a property tax because it was "imposed on the privilege of shipping the commodity and putting it into trade channels." 207 La. at 886, 22 So.2d at 205.

In *Lionel's Cigar Store*, this court considered the distinction between an excise or license tax and a property tax, with regard to a tax levied on the retailing of tobacco and tobacco products. The court had to determine whether the tax was levied on the ownership of the product or on the privilege of selling at retail tobacco and tobacco products. The court first rejected the premise that the language of the taxing statute, to the effect that the tax was levied "upon tobacco and tobacco products," required it to be classified as a tax on property. The court reasoned that the title of the act and the language therein made it clear that the tax was to be levied on and paid by the retailer, and thus the tax was not levied on the ownership but on the right to sell at retail. The court explained that because the tax was collectable only from persons, firms, and corporations engaged in selling tobacco and tobacco products, the tax was an excise or license tax on the privilege of selling tobacco and tobacco products at retail and not a tax on the products themselves. The court further explained:

> What characterizes this tax as a license tax, and not a property tax, is that it is collectable only from those who are engaged in the business of selling tobacco and tobacco products at retail and is measured in proportion to the retail selling price.

> Even though the retail selling price may be regarded as the value of the article, and the tax therefore as a proportion of the value, that alone would not make the tax a property tax. *Gulf Refining Co. v. McFarland, Supervisor of Public Accounts*, 154 La. 251, 97 So. 433. The incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectable from the owner of the property unless he is engaged in the business of selling it at retail, and that it is levied and collected then only in proportion, approximately, to the amount of the retail sales. * * *

16

*Lionel's Cigar Store*, 162 La. at 965, 111 So. at 344.

Lastly, this court in *Roberts, supra*, distinguished excise, license, and privilege taxes from property taxes. *See Mire*, 540 So.2d at 952-53. The *Roberts* court was required to determine whether the city's occupational license tax as measured by the gross sales of gasoline used in the generation of motive power was a prohibited "excise, license or privilege tax" on gasoline under the 1921 Constitution. The *Roberts* court found that it was not a property tax, and explained as follows:

> When a license tax is levied on [classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession], it is a tax levied on the activity or occupation of selling or otherwise dealing in or with certain property and perforce becomes a license, excise or privilege tax on the activity or occupation and not a direct tax on the property. It must be conceded that neither our general law nor our well-known jurisprudence recognizes an 'excise', 'license' or 'privilege' tax on property. It therefore becomes apparent that the tax levied by the Baton Rouge City Ordinance is not upon the gasoline itself as a property but is an excise, license or privilege tax levied upon the activity or occupation of selling at retail prices or otherwise dealing with gasoline or other motor fuels, i.e., an occupational license, excise or privilege tax which unmistakably means a tax upon the privilege of pursuing the said vocation or business or calling. Such an occupational tax has none of the attributes of an ad valorem tax. The tax does not fall upon the owner merely because of ownership. It is not measured by the value of gasoline and is not laid directly upon the property itself. The value of the gasoline may fluctuate at will by the amount per gallon but the tax remains constant.

*Roberts*, 236 La. at 540, 108 So.2d at 117-18. Notably for our purposes, in examining the definition of an excise tax the *Roberts* court opined that an "excise tax" has "a wider and more comprehensive meaning" than a license tax, and "'now includes every form of taxation which is not a burden levied directly upon persons or property, every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.'" 236 La. at 535, 108 So.2d at 115-16 (quoting Ballentine's Law Dictionary, 1930 Ed, supplemented to 1954, p. 460).

17

Applying the reasoning of this court's jurisprudence, we find the state gallonage tax is an occupational license tax on dealers for the privilege of handling high alcoholic content beverages. The City's gallonage tax is similarly an occupational license tax on dealers engaged in the handling of high alcoholic content beverages, and thus is permitted by La. Const. Art. VI, § 28, so long as it does not exceed the amount of tax on such beverages levied by the state.[13]

CONCLUSION

For the reasons set forth above, we find the trial court erred in holding the City's gallonage tax set forth in Section 10-501 is unlawful, unenforceable, and unconstitutional under La. Const. Art. VI, § 28. We thus reverse the partial summary judgment in favor of the plaintiffs and remand this matter to the trial court for further proceedings.

**REVERSED AND REMANDED**

---

[13] We decline to determine on this record whether the City's occupational license tax exceeds that of the permitted occupational license tax. However, the City's gallonage tax levied on the volume of high alcoholic content beverages is on its face substantially less than the gallonage tax levied by the state. *See and compare* Municipal Code Section 10-501 and La. R.S. 26:341. For example, according to the City, the state rate for liquor is $0.80 per liter (La. R.S. 26:341(A)(1)), whereas the City's rate on liquor is approximately $0.11 per liter (Section 10-501(1)). Notwithstanding, the trial court made no findings as to whether the City's occupational license tax actually exceeded that permitted under La. Const. Art. § 28.

**SUPREME COURT OF LOUISIANA**

**No. 2018-CA-0280**

**BEER INDUSTRY LEAGUE OF LOUISIANA AND WINE AND SPIRITS FOUNDATION OF LOUISIANA, INC.**

**VERSUS**

**THE CITY OF NEW ORLEANS AND NORMAN S. FOSTER, IN HIS OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE  FOR THE CITY OF NEW ORLEANS**

**CONSOLIDATED WITH**

**NO. 2018-CA-0285**

**LOUISIANA RESTAURANT ASSOCIATION, INC.**

**VERSUS**

**THE CITY OF NEW ORLEANS AND NORMAN S. FOSTER, IN HIS OFFICIAL CAPACITY AS CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE  FOR THE CITY OF NEW ORLEANS**

**ON APPEAL FROM THE ORLEANS CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**Hughes, J., dissenting.**

Respectfully, I believe the City exceeds its authority.  The Legislature in Chapter 3 of Title 47 of the Revised Statutes, entitled "Occupational License Tax," provides for the imposition of license taxes on businesses, including by municipalities.  Separately, in Title 26, entitled "Alcoholic Beverage Control Law," the Legislature established regulations for the sale of alcohol, including Part III of Chapter 2, entitled "Gallonage Tax".  The tax scheme here proposed by the City exceeds the mandate of the Legislature.