WILLIAMS, J.
*788 In this lawsuit arising out of a collision between an automobile and a motorcycle, Robert Murphy and Pamela Murphy appeal a summary judgment dismissing their claims against the Louisiana Department of Transportation and Development. Concluding that the affidavit from the Murphys' expert presented factual issues precluding summary judgment, we reverse and remand.
FACTS
On December 5, 2012, Robert Murphy was driving his motorcycle south on a two-lane stretch of Louisiana Highway 538 in Shreveport known as Old Mooringsport Road. Highway 538 is part of the Louisiana state highway system. At the same time, Shauntal Savannah was driving her Nissan Maxima in the opposite direction on that same stretch of Old Mooringsport Road. Their vehicles collided at the intersection of Old Mooringsport Road and Ravendale Drive ("the intersection") when Savannah turned left in front of Murphy. The motorcycle struck the passenger-side door of the Maxima in Murphy's lane of traffic. The intersection has been described as a "Y-type" intersection.
In August 2013, the plaintiffs, Robert Murphy and his wife, Pamela Murphy, filed a petition for damages against the defendants, Shauntal Savannah ("Savannah"), her liability insurer, State Farm Mutual Automobile Insurance Company ("State Farm") and the State of Louisiana through the Department of Transportation and Development ("DOTD"). The Murphys alleged that DOTD was at fault because of its failure to warn motorists of a dangerous condition and failure to remedy the defective design of the intersection that created an unreasonably dangerous condition of which DOTD had actual and constructive notice.
DOTD filed an answer and amended answer denying knowledge of any alleged unreasonably dangerous condition and asserting the fault of third parties, including Savannah and Robert Murphy. In December 2013, following a settlement, the Murphys dismissed their claims against Savannah and State Farm.
In February 2017, DOTD filed a motion for summary judgment alleging that the accident was caused solely by the grossly negligent actions of Savannah and that the Murphys could not present any evidence of DOTD's negligence or liability. Attached to the motion for summary judgment were an affidavit from a DOTD civil engineer, an affidavit from an expert engineer, and excerpts from the deposition transcripts of the two drivers.
Kevin Blunck is a civil engineer employed as a District Area Engineer by DOTD in District 4, which includes all of Caddo Parish. He was charged with coordinating all maintenance operations for state highways located in Caddo and Red River Parishes, making him personally familiar *789 with any issues, transactions, complaints, construction, and maintenance projects having to do with Highway 538 in Caddo Parish. Blunck testified that at the time of the accident, there was no record of any DOTD repairs, maintenance projects, or construction projects that were being performed on the section of Highway 538 located at or near the intersection. Blunck stated that there were no records of any complaints having been made to DOTD, within 180 days prior to the accident, regarding any alleged deficiencies or defects with respect to the section of Highway 538 located at or near the intersection.
Dr. Joseph Blaschke is a civil engineer who was retained by DOTD to investigate and evaluate the circumstances surrounding the accident. He was asked to address whether the traffic control devices on Highway 538 at or near the intersection were in compliance with the Manual on Uniform Traffic Control Devices ("MUTCD") at the time of the crash and whether there were sufficient sight distances for motorists on Highway 538 to safely observe both the traffic control devices and any oncoming traffic. As part of his investigation, Dr. Blaschke inspected the crash site twice and conducted lines-of-sight and time/distance evaluations (relative to available sight distances) for motorists operating vehicles in the vicinity of the intersection. He also reviewed photographs of the crash scene, the accident report and the deposition transcripts of Robert Murphy and Savannah.
Dr. Blaschke testified that his investigation revealed that the traffic control devices in place at the time of the accident on Highway 538 at the intersection were in compliance with MUTCD. He stated that his evaluation of the roadways did not reveal any roadway abnormalities or design deficiencies on Highway 538 at the intersection at the time of the crash that would be considered in violation of or inconsistent with any roadway design standards or guidelines applicable at the time of original construction. He added that there were sufficient lines of sight (or sight distances) available for both drivers to observe the various traffic control devices that were in place along their respective travel routes and there were sufficient stopping sight distances available for both drivers to observe the approaching intersection, see any vehicle present at or approaching the intersection, and negotiate the intersection safely.
Dr. Blaschke concluded that the area of Highway 538 at the intersection was not unreasonably dangerous. He further concluded that all of the physical evidence and the testimony of the two drivers revealed that the sole cause of the accident was Savannah's failure to yield the right of way to Robert Murphy. According to Blaschke, he reached these conclusions because both drivers had testified that there were no sight distance restrictions relative to the geometry of the roadway that prohibited either driver from seeing the other's vehicle prior to the crash and Savannah had testified that she was at fault in causing the accident.
In her deposition, Savannah testified that she lived near the accident site and that she made a left turn onto Ravendale Drive from Old Mooringsport Road every day that she drove her children to school. She described how a truck was in front of her on Old Mooringsport Road before she turned left to go onto Ravendale Drive. She claimed that her vehicle came to a complete stop and that she looked for oncoming traffic prior to starting her left turn. She also claimed that her left turn signal was on. Savannah asserted that she was at fault for the accident because she never saw Murphy's motorcycle before making her turn. She denied that a curve *790 on Old Mooringsport Road prevented her from seeing the oncoming motorcycle.
Murphy testified in his deposition he was familiar with the section of Old Mooringsport Road near the intersection as that was his regular route to work each morning. He recalled that there was not much traffic that morning. Murphy denied that there were any sight obstructions preventing him from seeing oncoming traffic as he drove on a curve toward the intersection. His deposition testimony contradicted Savannah's testimony that she came to a complete stop and had activated her left turn signal before commencing her turn. He maintained that Savannah was still approaching the intersection when he first saw her vehicle.
Plaintiffs argued in opposition to the motion for summary judgment that the intersection was unreasonably dangerous because it was constructed at a 20-degree acute angle which made it susceptible to left-turning crashes. Attached to plaintiffs' opposition was an affidavit from V.O. Tekell, Jr., a traffic operations engineer licensed by the Institute of Transportation Engineers. Tekell had served as the Transportation Engineer for Lafayette Parish Consolidated Government. He noted that Ravendale Drive formed a "Y" intersection with Old Mooringsport Road, and that the intersection was constructed at an extremely acute angle of less than 20 degrees. He quoted the 1940 AASHO (American Association of State Highway Officials) publication, which stated that for such intersections, "at any but slow speeds these nearly head-on crossings at a small angle are dangerous." He added that the publication advised that regardless of the type of intersection, it is desirable that intersecting roads meet at right angles for both safety and economy. He also testified that AASHO has continually reaffirmed that intersecting roads should meet at or nearly at right angles for economy and safety, and that acute-angle intersections increase the exposure time of vehicles crossing the main traffic flow.
Tekell noted that for over 70 years, AASHO[1] has cautioned state officials that acute angle intersections, especially ones as extreme as the intersection at issue, are particularly susceptible to left-turning crashes similar to the one that occurred between Murphy and Savannah. Tekell further noted that although it was not known when the intersection was constructed, there had been over 50 years of notice that the design is flawed and accident-prone. Finally, Tekell concluded that the layout of the intersection was a contributing factor in causing the crash that occurred.
DOTD filed a motion to strike the exhibits attached to Tekell's affidavit except for his curriculum vitae. DOTD contended that the documents were not properly authenticated and did not fall within the category of documents authorized under the Code of Civil Procedure to be filed in support of or in opposition to the motion for summary judgment. The Murphys countered that Tekell would be able to rely upon hearsay or otherwise inadmissible documents at trial, and that the documents became properly authenticated for this summary proceeding when Tekell incorporated them by reference in his affidavit. The trial court granted the motion to strike.
After a hearing, the trial court sustained the motion for summary judgment, noting that Tekell never rendered an opinion that *791 the intersection was unreasonably dangerous, and dismissed all of the Murphys' claims. The Murphys appeal the judgment.
DISCUSSION
Summary Judgment
The Murphys contend the trial court erred in granting summary judgment. They argue that a genuine issue of fact exists as to whether the design of the intersection was a cause of the accident.
A summary judgment is reviewed on appeal de novo , with the appellate court using the same criteria that govern the district court's determination of whether summary judgment is appropriate, i.e. , whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880.
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Hines v. Garrett , 2004-0806 (La. 6/25/04), 876 So.2d 764.
The supreme court recently restated what is required of the moving party and the non-moving party on a motion for summary judgment:
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. See La. C.C.P. art. 966(D)(1) ; see also Schultz v. Guoth , 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.
When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B) ; see also Dejoie v. Medley , 2008-2223 (La. 5/5/09), 9 So.3d 826, 832. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall , 2003-1488 (La. 4/23/04), 874 So.2d 131, 137.
Larson v. XYZ Insurance Company , 2016-0745 (La. 5/3/17), 226 So.3d 412.
In ruling on a motion for summary judgment, the district judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett , supra .
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from *792 the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders , 2000-2507 (La. 12/8/00), 775 So.2d 1049 (per curiam).
DOTD's Liability
Louisiana law allows plaintiffs to pursue tort claims against public entities such as the DOTD based on La. C.C. arts. 2315 and 2317 and La. R.S. 9:2800. Henderson v. Nissan Motor Corp. , 2003-0606 (La. 2/6/04), 869 So.2d 62 ; Skulich v. Fuller , 46,733 (La. App. 2 Cir. 12/14/11), 82 So.3d 467. Regardless of the theory of recovery, the legal analysis is the same. Passon v. Fields , 50,635 (La. App. 2 Cir. 5/18/16), 196 So.3d 645. Plaintiffs must show that: (1) DOTD had custody of the thing that caused the plaintiffs' injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiffs' injuries. Fontenot v. Patterson Ins. , 2009-0669 (La. 10/20/09), 23 So.3d 259.
The duty placed upon DOTD was discussed in Fontenot :
The primary duty of the DOTD is to continually maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. It is the DOTD's knowledge, constructive or actual, which gives rise to the obligation to take adequate measures necessary to prevent injury. Notably, the DOTD's duty of care extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive.
Nonetheless, this Court is also cognizant that the DOTD is not a guarantor of the safety of all the motoring public under every circumstance. Nor is the DOTD the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway. This Court has also held that the DOTD's failure to design or maintain the state's highways to modern standards does not establish the existence of a hazardous defect in and of itself. In other words, we will not impose liability for every imperfection or irregularity, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Whether the DOTD breached its duty, that is, whether the intersection was in an unreasonably dangerous condition is a question of fact and will depend on the facts and circumstances of each case.
Id. , 2009-0669 at pp. 15-16, 23 So.3d at 270-271 (citations omitted).
Unreasonable risk of harm
DOTD has no duty to bring old highways up to current safety standards, unless the highway has undergone major reconstruction. Nevertheless, the State has a duty to correct conditions existing on old highways that are unreasonably dangerous. Cormier v. Comeaux , 98-2378 (La. 7/7/99), 748 So.2d 1123 ; Toston v. Pardon , 2003-1747 (La. 4/23/04), 874 So.2d 791.
In Broussard v. State ex. rel. Office of State Bldgs. , 2012-1238 (La. 4/5/13), 113 So.3d 175, the supreme court discussed the analysis to determine the presence of an unreasonable risk of harm:
We have described the question of whether a defect presents an unreasonable risk of harm as "a disputed issue of *793 mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." Reed v. Wal-Mart Stores, Inc. , 97-1174, p. 4 (La. 3/4/98), 708 So.2d 362, 364 (quoting Tillman v. Johnson , 612 So.2d 70 (La.1993) (per curiam) ). As a mixed question of law and fact, it is the fact-finder's role-either the jury or the court in a bench trial-to determine whether a defect is unreasonably dangerous. Thus, whether a defect presents an unreasonable risk of harm is "a matter wed to the facts" and must be determined in light of facts and circumstances of each particular case. E.g. , Dupree v. City of New Orleans , 99-3651, pp. 13-14 (La. 8/31/00), 765 So.2d 1002, 1012 (citation omitted); Reed , 97-1174 at p. 4, 708 So.2d at 364.
To aid the trier-of-fact in making this unscientific, factual determination, this Court has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair. See , e.g. , Reed , 97-1174 at p. 5, 708 So.2d at 365 ; Boyle v. Board of Sup'rs, Louisiana State Univ. , 96-1158 (La. 1/14/97), 685 So.2d 1080, 1083 ; Specifically, we have synthesized this risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. E.g. , Dauzat v. Curnest Guillot Logging, Inc. , 08-0528, p. 5 (La. 12/2/08), 995 So.2d 1184, 1186-87 (per curiam); Hutchinson v. Knights of Columbus, Council No. 5747 , 03-1533, pp. 9-10 (La. 2/20/04), 866 So.2d 228, 235 ; Pitre v. Louisiana Tech. Univ. , 95-1466, pp. 12-16 (La. 5/10/96), 673 So.2d 585, 591-93.
Broussard , 2012-1238 at pp. 9-10, 113 So.3d at 183-84.
Broussard should not be interpreted as a limit on summary judgment practice involving issues of unreasonable risk of harm. Allen v. Lockwood , 2014-1724 (La. 2/13/15), 156 So.3d 650. The granting of summary judgment is not precluded in cases where the plaintiff is unable to produce factual support for his claim that a complained-of condition or thing is unreasonably dangerous. Id. In such a procedural posture, the court's obligation is to determine if there is a genuine issue of material fact as to whether the condition or thing created an unreasonable risk of harm. Id.
DOTD notes that it is well settled that compliance with the provisions of the MUTCD, which is mandated by La. R.S. 32:235, is prima facie proof of DOTD's absence of fault when an injured motorist attempts to predicate DOTD's liability on improper signalization or road marking. See Skulich v. Fuller , supra . Prima facie proof is sufficient only if not rebutted or contradicted. Id. However, plaintiffs are predicating DOTD's liability in this matter mainly on the design of the intersection, not the signalization or road marking of the intersection.
We are mindful of the role of expert witnesses. La. C.E. art. 702 states that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. To defeat a properly supported motion for summary judgment, an expert's opinion must be more than a conclusory *794 assertion about ultimate legal issues. Lee v. McGovern , 49,953 (La. App. 2 Cir. 7/1/15), 169 So.3d 814.
In the present case, Dr. Blaschke concluded that the area of Highway 538 at or near the intersection was not unreasonably dangerous. Although plaintiffs' expert Tekell did not expressly testify that the intersection was unreasonably dangerous, that omission is not fatal in light of other assertions made by Tekell in his affidavit. For example, in Willis v. Medders , supra , a summary judgment case, the supreme court noted that the statement in the affidavit from the plaintiff's engineering expert that a proposed alternative design was being used allowed the reasonable inference that such alternative was economical and satisfied the risk-utility standard. In Dupas v. Travelers Property Cas. Ins. Co. , 2000-12 (La. App. 3 Cir. 5/3/00), 762 So.2d 127, writ denied , 2000-1541 (La. 6/30/00), 766 So.2d 548, the defendant argued that a directed verdict should have been granted because although the plaintiff's expert testified that a display platform at a store created a hazard, he did not testify that this hazard was unreasonably dangerous. Dismissing this argument, the appellate court noted that "unreasonably dangerous" is a conclusion which only the trier of fact may draw. The court determined that the evidence and inferences allowed a reasonable person to find that the platform presented an unreasonably dangerous condition.
In his affidavit in this case, Tekell characterized the intersection as a "Y" intersection with an extremely acute angle of less than 20 degrees. He stated that according to AASHO: (i) it is desirable that intersecting roads meet at right angles for economy and for safety; (ii) acute angle intersections increase the exposure time of vehicles crossing the main traffic flow; and (iii) acute angle intersections are particularly susceptible to left-turning crashes. Tekell added that there had been over 50 years of notice that this design is flawed and accident prone. He concluded that the layout of the intersection was a contributing factor in causing the crash. After considering these statements in Tekell's affidavit, a fact finder could reasonably draw the inference that the intersection was unreasonably dangerous. Accordingly, a genuine issue of material fact exists regarding whether the design of the intersection constituted an unreasonable risk of harm.
Notice
A public entity's liability for a defective thing within its custody or care is ordinarily analyzed under La. R.S. 9:2800(C), which provides that a person shall not have a cause of action based solely on liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence and failed to remedy the defect after a reasonable opportunity to do so. Broussard v. State ex. rel. Office of State Bldgs., supra .
Constructive notice is the existence of facts which infer actual knowledge. La. R.S. 9:2800(D). This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that a defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable care. Johnson v. City of Bastrop , 41,240 (La. App. 2 Cir. 8/1/06), 936 So.2d 292.
DOTD civil engineer Blunck asserted in his affidavit that there were no records of any complaints to DOTD by any person, *795 entity, agency, or municipality regarding any alleged deficiencies or defects having to do with the section of Highway 538 located at the intersection within at least 180 days prior to the accident. However, Tekell testified that for over 70 years, AASHO had cautioned that acute angle intersections were particularly susceptible to left-turning crashes. He also testified that there was over 50 years of notice from AASHO that the design of acute angle intersections was flawed and accident prone. These statements by Tekell created a genuine issue of material fact regarding the element of DOTD's notice of the defect.
Causation
DOTD contends that the accident was solely caused by the grossly negligent actions of Savannah when she failed to yield and made a left turn in the path of the oncoming motorcycle.
"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard." La. R.S. 32:122. Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. Green v. Nunley , 42,343 (La. App. 2 Cir. 8/15/07), 963 So.2d 486.
However, the inquiry regarding causation does not end there. For example, this court has recognized that notwithstanding the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. Baker v. State Farm Mut. Auto Ins. Co. , 49,468 (La. App. 2 Cir. 1/21/15), 162 So.3d 405.
Although Savannah accepted fault for causing the accident, her statement does not preclude the possibility that another party, such as DOTD, may have been partially at fault. Savannah testified that she guessed she did not see the motorcycle because of a truck in front of her. While Savannah claimed only that the truck in front of her prevented her from seeing the motorcycle, this does not discount the role that the intersection design may have played in putting her in a position where her view of oncoming traffic was obscured by a truck in front of her that continued traveling on Old Mooringsport Road.
We note that the failure of a driver to maintain control of a vehicle does not relieve DOTD of its duty to keep the highways safe. The fact that more than one party can contribute to the harm is the reason for our comparative fault system. See Campbell v. Louisiana Dept. of Transp. & Development , 94-1052 (La. 1/17/95), 648 So.2d 898. Moreover, causation is a factual issue to be determined by the fact finder. Cay v. State, DOTD , 93-0887 (La. 1/14/94), 631 So.2d 393.
Tekell opined in his affidavit that the layout of the intersection was a contributing factor in causing the accident, contradicting Blaschke's opinion that the accident was caused solely by the fault of Savannah. This conflicting expert testimony creates a genuine issue of material fact regarding the element of causation. Based upon this record, we conclude that genuine issues of material fact exist as to whether the design of the intersection is unreasonably dangerous, whether DOTD had notice of the hazard and whether the intersection design was a cause of the damages. Consequently, the district court erred in granting summary judgment.
Motion to strike
The Murphys contend the trial court erred in striking documents that *796 were attached to Tekell's affidavit. The Murphys argue that the exhibits were incorporated by reference in Tekell's affidavit and were properly certified for the purpose of summary judgment.
When a court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. La. C.C.P. art. 1636(A). It is incumbent upon the party who contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives the right to complain of the exclusion on appeal. Hudspeth v. Smith , 42,647 (La. App. 2 Cir. 11/7/07), 969 So.2d 793.
The Murphys made no proffer of the documents which were stricken from the record. Accordingly, they waived their right to complain of this exclusion on appeal. The assignment of error lacks merit.
CONCLUSION
Based on the foregoing reasons, the district court's judgment granting the motion for summary judgment is reversed and this matter is remanded for further proceedings. Costs of this appeal in the amount of $324.50 are assessed to DOTD.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GARRETT, STONE and STEPHENS, JJ.
Rehearing denied.

AASHO was later known as AASHTO (American Association of State Highway and Transportation Officials). For the sake of simplicity, AASHO will also refer to the later name.