# Supreme Court of Louisiana

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**PER CURIAM**:

2018-C-0991    ROBERT G. MURPHY AND PAMELA MURPHY v. SHAUNTAL SAVANNAH; STATE
               FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A.K.A. STATE FARM;
               STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF TRANSPORTATION AND
               DEVELOPMENT (Parish of Caddo)

               For the reasons assigned, the judgment of the court of appeal is
               reversed.  The judgment of the district court granting summary
               judgment in favor of the State of Louisiana through the
               Department of Transportation and Development and dismissing the
               claims of Robert G. Murphy and Pamela Murphy with prejudice is
               hereby reinstated. REVERSED.

               JOHNSON, C.J., dissents and assigns reasons.

               CRICHTON, J., dissents for the reasons assigned by Justice
               Genovese.

               GENOVESE, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2018-C-0991

ROBERT G. MURPHY AND PAMELA MURPHY

VERSUS

SHAUNTAL SAVANNAH; STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, A.K.A.
STATE FARM; STATE OF LOUISIANA, THROUGH THE
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT,  PARISH OF CADDO

**PER CURIAM**

In this case, we are called upon to decide whether the district court erred in granting summary judgment in favor of defendant on the ground that plaintiff failed to establish any genuine issues of material fact regarding whether the intersection at issue was unreasonably dangerous.  Finding no error in the ruling of the district court, we now reverse the judgment of the court of appeal and reinstate the summary judgment.

**FACTS AND PROCEDURAL HISTORY**

Robert Murphy was operating his motorcycle on a two-lane stretch of Louisiana Highway 538, known as Old Mooringsport Road, which runs in a north-south direction.  Mr. Murphy was proceeding on southerly direction.

At the same time, Shauntal Savannah was driving her Nissan Maxima in the northbound lane of Old Mooringsport Road.  As Ms. Savannah approached the intersection of Old Mooringsport Road and Ravensdale Drive, she pulled into the southbound lane with the intent to turn onto Ravensdale Drive.  As she did so, she

entered Mr. Murphy's lane of travel. Mr. Murphy's motorcycle struck the passenger-side door of Ms. Savannah's vehicle, causing injury to Mr. Murphy.

Thereafter, Mr. Murphy and his wife (hereinafter referred to as "plaintiffs") filed the instant suit against the State of Louisiana through the Department of Development and Transportation ("DOTD").[1] Plaintiffs alleged DOTD failed to warn of a dangerous condition and failed to remedy the defective design of the intersection.

After discovery, DOTD filed a motion for summary judgment. In support, DOTD relied on the affidavit of Kevin Blunck, a civil engineer employed by DOTD, who averred that at the time of the accident, DOTD did not have a record of any repairs, maintenance, or construction projects that were being performed in the section of Highway 538 located at or near the intersection. Mr. Blunck stated DOTD had no record of any complaints within 180 days prior to the accident with respect to the intersection.

Additionally, DOTD attached Ms. Savannah's deposition testimony. Ms. Savannah, who was familiar with the intersection, admitted she was at fault for the accident because she did not see Mr. Murphy's motorcycle before making her turn. Ms. Savannah also denied that a curve on Old Mooringsport Road prevented her from seeing the oncoming motorcycle.

DOTD further attached an excerpt from Mr. Murphy's deposition. When asked if there were any type of sight obstructions that would have kept a driver from seeing approaching vehicles at or near the intersection, Mr. Murphy responded, "No sir. It was wide open."

---

[1] Plaintiffs also filed suit against Ms. Savannah and her insurer, State Farm Mutual Automobile Insurance Company. Plaintiffs later settled with these defendants, leaving DOTD as the sole defendant.

DOTD also relied on an affidavit from Dr. Joseph Blaschke, a civil engineer licensed in Texas, Louisiana and Mississippi.[2] Dr. Blaschke indicated he was asked to address whether the traffic devices that were present at the time of the crash on La. Hwy. 538 at or near its intersection with Ravendale Drive were in compliance with the Manual on Uniform Traffic Control Devices and also whether there were sufficient sight distances available for motorists traveling along this route to be able to observe safely both the traffic control devices that were present and any on-coming traffic.

To prepare his affidavit and render an opinion, Dr. Blaschke advised he "personally viewed and inspected the crash site on two separate occasions and the surrounding areas of both La. Hwy. 538 (a/k/a Old Mooringsport Road) and Ravendale Drive in Shreveport, Caddo Parish, Louisiana." Dr. Blaschke conducted lines-of-sight and time/distance evaluations (relative to available sight distances) for motorists operating vehicles in the vicinity of the intersection at issue and reviewed multiple pleadings, depositions, reports, and demonstrative evidence in connection with his investigation. Based on this review, he stated:

> My review of the records mentioned and my evaluation of both roadways revealed that at the time of the crash, there were no roadway abnormalities or design deficiencies on Louisiana Highway 538, at or near its intersection with Ravendale Drive, that would be considered in violation of or inconsistent with any roadway design standards or guidelines at the time of original construction. There were sufficient lines-of-sight (or sight distances) available for both drivers to observe the various traffic control devices that were in place along their respective travel routes. There also was sufficient stopping sight distances available for both drivers to observe the approaching intersection, see any vehicle present at or approaching the intersection, and negotiate the intersection safely.

---

[2] The affidavit indicates Dr. Blaschke received his Bachelor of Science in civil engineering from Texas A&M University in 1971; an M.E. in civil engineering from Texas A&M University in 1972; and a Doctor of Engineering, from Texas A&M University in 1983.

Finally, Dr. Blaschke concluded the area of roadway at issue that was being traveled upon by plaintiff was not unreasonably dangerous. He explained that all the physical evidence as well as the testimony of the two drivers revealed the sole cause of the crash was Ms. Savannah's failure to yield the right-of-way to the on-coming motorcycle driven by Robert Murphy. Both drivers testified there were no sight distance restrictions relative to the geometry of the roadway that prohibited either driver from seeing the other respective vehicle prior to the crash. Additionally, he noted Ms. Savannah clearly testified that she was "at fault" and her actions were the cause of the crash.

In opposition to DOTD's motion, plaintiffs relied on the affidavit of V.O. Tekell, Jr., a traffic operations engineer. Mr. Tekell's affidavit indicated he received his Bachelor of Science in civil engineering from the University of Louisiana at Lafayette in 1980. His post-graduate training includes traffic institute courses and federal highway administration courses.

To prepare his affidavit and render an opinion, Mr. Tekell reviewed multiple pleadings, depositions, accident reports, excerpts from the American Association of State Highway Officials ("AASHO") publications, and certain DOTD daily work reports.[3]

Mr. Tekell stated that in a 1940 publication, AASHO opined that regardless of the type of intersection, for safety and economy, intersecting roads should meet at or nearly at right angles. Mr. Tekell notes the AASHO made repeat affirmations in 1965, 1973, 1984, 1990, 2001, 2004, and 2011. According to Mr. Tekell, based on

---

[3] Attached to Mr. Tekell's affidavit were various documents, including excerpts from the AASHO standards. DOTD filed a motion to strike all the attachments (other than Mr. Tekell's curriculum vitae), arguing the documents were not properly authenticated and did not fall within the category of documents authorized under the Code of Civil Procedure to be filed in opposition to a motion for summary judgment. The district court granted the motion to strike, and the court of appeal affirmed this portion of the district court's ruling. Plaintiffs did not seek review in this court; therefore, the ruling on the motion to strike is final.

his review of a 2012 aerial photo of the intersection at issue and the AASHO guidelines, it was his opinion the "Y" intersection at issue was constructed at an acute angle of less than twenty degrees. Mr. Tekell further states that "while it is not yet known when this particular intersection was constructed there has been over ½ century of notice that the design is flawed and accident prone." Finally, Mr. Tekell concluded the layout of the intersection was a "contributing factor" to the crash at issue.

After a hearing, the district court granted DOTD's motion for summary judgment, finding there were no genuine issues of material fact in dispute. In oral reason for judgment, the district court stated:

> The problem is, [Mr. Tekell] does not say in his affidavit that this, the design of this intersection is unreasonably dangerous. It would certainly seem to me that a civil engineer of his experience would know in order to defeat a motion for summary judgment he needs to say it's unreasonably dangerous if that's his opinion, and he does not say that in his affidavit. It's conspicuously absent from his affidavit. . . .
>
> * * *
>
> However, I do agree with defense counsel in this case. We have a situation where he has an engineer who has looked at the site personally on two occasions, he has reviewed the pleadings, and states in his affidavit, quote, further, all physical evidence and testimony of the two drivers reveals that the sole cause of the crash at issue was Ms. Savannah's failure to yield the right-of-way to the Murphy motorcycle. Both drivers testified that there were no sight distance restrictions relative to the geometry of the roadway that prohibited either driver from seeing the other vehicle prior to the crash. In addition, Ms. Savannah clearly testified that she was at fault, and her actions were the cause of the crash.
>
> Mr. Tekell, on the other hand, did not personally view the accident site, and as I've pointed out, I've read through his affidavit, and he does not testify in his affidavit that the design of the intersection was unreasonably dangerous. The closest he comes is that, quote, the layout of the intersection was a contributing factor to the crash that

5

occurred on December 5, 2012. That does not - - that falls far short of rendering an opinion that the design of the intersection was unreasonably dangerous. As pointed out by counsel for DOTD, the recommendations cited by plaintiffs are just that, recommendations, but they are not mandatory.

Therefore, the district court granted summary judgment in favor of DOTD finding "no genuine issue of material fact present in this case." In doing so, the court explained "plaintiff's expert does not render an opinion that the intersection was unreasonably dangerous, only that it may have been a contributing factor to the accident."

Plaintiffs appealed. The court of appeal reversed, finding "that genuine issues of material fact exist as to whether the design of the intersection is unreasonably dangerous, whether DOTD had notice of the hazard and whether the intersection design was a cause of the damages. *Murphy v. Savannah*, 51,906 (La. App. 2 Cir. 4/11/18), 246 So.3d 785, 795.

Upon DOTD's application, we granted certiorari to consider the correctness of this decision. *Murphy v. Savannah*, 18-0991 (La. 12/3/18), ___ So.3d ___.

## DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Beer Indus. League of Louisiana v. City of New Orleans*, 2018-0280 (La. 6/27/18), 251 So. 3d 380, 385–86; *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544, 546. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of civil actions (with the exception of certain domestic matters) and is favored in our law. La. Code Civ. P. art, 966(A)(2); *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So.2d 669, 686.

6

A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058, 1070. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. Code Civ. P. art. 966(B); *Kennedy*, 935 So.2d at 686.

On a motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. La. Code Civ. P. art. 966(D)(2); *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So.3d 851, 854; *Schultz v. Guoth*, 10–0343 (La.1/19/11), 57 So.3d 1002, 1006.

In the instant case, DOTD will not bear the burden of proof at trial. Therefore, as the party moving for summary judgment, DOTD's burden is to show an absence of factual support for one or more elements essential to plaintiffs' claim.

In order for plaintiffs to prevail in their claim against DOTD, they must prove: (1) DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm,

7

(3) DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries. *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123, 1127.

The main focus of DOTD's motion for summary judgment was on plaintiffs' inability to establish the design of the intersection created an unreasonable risk of harm. In support of its position, DOTD relied on the expert affidavit of Dr. Blaschke, who opined that at the time of the accident, there were "no roadway abnormalities or design deficiencies on Louisiana Highway 538, at or near its intersection with Ravendale Drive, that would be considered in violation of or inconsistent with any roadway design standards or guidelines at the time of original construction." Dr. Blaschke further explained that there were "sufficient lines-of-sight (or sight distances) available for both drivers to observe the various traffic control devices that were in place along their respective travel routes." This assertion was corroborated by Ms. Savannah, who expressly denied that the curve on Old Mooringsport Road prevented her from seeing the oncoming motorcycle. Similarly, Mr. Murphy testified in his deposition that the intersection was "wide open" with respect to visibility.

Considering this evidence, we find DOTD satisfied its initial burden of establishing a lack of factual support for essential elements of plaintiffs' claim. Therefore, the burden shifted to plaintiffs to establish that they can satisfy their burden of proof at trial.

Plaintiffs' opposition relies on the affidavit of Mr. Tekell. Mr. Tekell cited the AASHO standards for the proposition that for reasons of safety and economy, intersecting roads "should" meet at or nearly at right angles. According to Mr. Tekell's affidavit, the intersection at issue was constructed at an acute angle of less than twenty degrees. He opined that such a design is "flawed and accident prone,"

8

and he concluded the layout of the intersection was a "contributing factor" to the crash at issue.

Unlike Dr. Blaschke's affidavit, Mr. Tekell's affidavit is devoid of any factual support for his conclusion that the design of this particular intersection was a contributing fact to the accident. At most, he suggests the intersection does not satisfy the general requirements of the 1940 AASHO guidelines that intersection roads, for reasons of "safety and economy," should meet at or nearly at right angles. However, he does not indicate that this requirement is mandatory, nor does he expressly contradict Dr. Blaschke's opinion that the intersection was not in violation of or inconsistent with any roadway design standards or guidelines at the time of original construction. Indeed, Mr. Tekell's affidavit acknowledges he was not aware of when this particular intersection was constructed. Therefore, rather than refuting Dr. Blaschke's opinion on the compliance of the intersection with applicable guidelines, Mr. Tekell's affidavit expressly leaves open the question of whether the intersection predated the 1940 AASHO guidelines he references.[4]

Most significantly, Mr. Tekell's affidavit sets forth no factual support for his conclusion that the design of the intersection contributed to this particular accident. Even assuming, *arguendo*, that the intersection was not in compliance with the aspirational direction set forth in the AASHTO guidelines, Mr. Tekell does not refute Dr. Blaschke's opinion (which was based on Dr. Blaschke's personal examination of the intersection) that there were sufficient lines-of-sight for both drivers to observe the traffic control devices that were in place. Moreover, he does not discuss the

---

[4] We have explained that DOTD "has no duty to bring old highways up to modern AASHTO standards, unless a new construction or major reconstruction of the highway had taken place." *Toston v. Pardon*, 2003-1747 (La. 4/23/04), 874 So.2d 791, 799. Mr. Tekell's affidavit is devoid of facts as to which standards were in place at the time the intersection was constructed, nor does he explain whether new construction or major reconstruction of the intersection took place.

statements of both drivers who testified that the design of the intersection did not create any visual obstructions.

An affidavit which is devoid of specific facts and based on conclusory allegations is not sufficient to defeat summary judgment. La. Code Civ. P. art. 967(B); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 2009-1633 (La. 4/23/10), 35 So.3d 1053, 1062. Mr. Tekell's conclusory statement that the design of the intersection was "flawed" and was a contributing factor of this accident is devoid of any factual foundation and is therefore insufficient to defeat DOTD's properly-supported motion for summary judgment.

Under these circumstances, we find the court of appeal erred in reversing the judgment of the district court granting summary judgment in favor of DOTD. The judgment of the district court is correct and must be reinstated.

**DECREE**

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court granting summary judgment in favor of the State of Louisiana through the Department of Transportation and Development and dismissing the claims of Robert G. Murphy and Pamela Murphy with prejudice is hereby reinstated.

**SUPREME COURT OF LOUISIANA**

**NO. 2018-C-0991**

**ROBERT G. MURPHY AND PAMELA MURPHY**

**VERSUS**

**SHAUNTAL SAVANNAH; STATE FARM MUTUAL
AUTO INSURANCE COMPANY, A.K.A. STATE FARM;
STATE OF LOUISIANA, THROUGH THE DEPARTMENT
OF TRANSPORTATION AND DEVELOPMENT**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF CADDO**

**JOHNSON, CHIEF JUSTICE, dissents and assigns reasons:**

I find the court of appeal correctly reversed the district court's judgment granting DOTD's motion for summary judgment. Thus, I respectfully dissent and would affirm the ruling of the court of appeal.

In order for the DOTD to be held liable, the plaintiffs have to prove that (1) the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries. *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So. 2d 1123, 1127 (citing *Brown v. Louisiana Indem. Co.*, 97–1344 (La. 3/4/98), 707 So. 2d 1240; *Lee v. State Through Dept. of Transp. and Development*, 97–0350 (La. 10/21/97), 701 So. 2d 676). In this case, the DOTD moved for summary judgment, arguing plaintiffs could not establish the design of the intersection created an unreasonable risk of harm. Although DOTD's expert submitted an affidavit opining that the intersection was not in violation of or inconsistent with any roadway design standards or guidelines at the time of original construction and was not unreasonably dangerous, plaintiffs' expert, V.O. Tekell, Jr., submitted an opposing affidavit. Mr.

Tekell, a traffic operations engineer, submitted an affidavit opining that the layout of the intersection was a contributing factor in causing the accident. Mr. Tekell characterized the intersection as a "Y" intersection with an extremely acute angle of less than 20 degrees. He stated that according to AASHO: (i) it is desirable that intersecting roads meet at right angles for economy and for safety; (ii) acute angle intersections increase the exposure time of vehicles crossing the main traffic flow; and (iii) acute angle intersections are particularly susceptible to left-turning crashes. Mr. Tekell added that there had been over 50 years of notice that this design is flawed and accident prone.

> As this court has explained:
>
> In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. (Internal citations removed).

*Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874, 878; *Larson v. XYZ Ins. Co.*, 16-0745 (La. 5/3/17), 226 So. 3d 412, 416. In my view, the majority of this court errs in weighing and evaluating the competing experts' affidavits to justify reinstating the summary judgment. It is clear a fact finder could reasonably draw an inference that the intersection was unreasonably dangerous based on Mr. Tekell's opinion. Thus, plaintiffs' submitted sufficient evidence to defeat the DOTD's motion for summary judgment.

I would find an issue of material fact exists regarding whether the intersection at issue was unreasonable dangerous and affirm the ruling of the court of appeal.

SUPREME COURT OF LOUISIANA

No. 2018-C-991

ROBERT G. MURPHY AND PAMELA MURPHY

VERSUS

SHAUNTAL SAVANNAH; STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, A.K.A. STATE FARM; STATE OF LOUISIANA,
THROUGH THE DEPARTMENT OF TRANSPORTATION AND
DEVELOPMENT

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF CADDO

**CRICHTON, J.,** dissents for the reasons assigned by Justice Genovese.

05/08/19

# SUPREME COURT OF LOUISIANA

## No. 2018-C-991

### ROBERT G. MURPHY AND PAMELA MURPHY

### VERSUS

### SHAUNTAL SAVANNAH; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A.K.A. STATE FARM; STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF CADDO

**Genovese, J., dissents and assigns the following reasons:**

The posture of this case is a summary judgment proceeding. In a summary judgment proceeding, where each side presents an expert with opposing views of the evidence, specifically as to whether an intersection is unreasonably dangerous, the case is not ripe for a summary judgment disposition.

In this case, involving a "Y" intersectional collision between a car and a motorcycle, defendant/state's expert opined that the intersection was not unreasonably dangerous; whereas, plaintiffs' expert opined that the layout of the "Y" intersection was a contributing factor in causing the accident. Plaintiffs' expert relied upon and quotes the 1940 American Association of State Highway Officials (AASHO) publication which stated that such intersections "at any but slow speeds[,] these nearly head-on crossings at a small angle are dangerous." Plaintiffs' expert notes that for over seventy years, AASHO has cautioned state officials that acute angle intersections, like the one at issue herein, are particularly susceptible to left-turning crashes similar to the one in this case and that the defendant/state had over fifty years of notice that the design was flawed and accident-prone. Nevertheless, the trial court granted the defendant/state's motion for summary judgment.

The court of appeal reversed, finding genuine issues of material fact as to whether the intersection presented an unreasonable risk of harm. In my view, the court of appeal got it right. There are genuine issues of material fact as to whether this "Y" intersection is unreasonably dangerous or presents an unreasonable risk of harm. The question is not whose dog is bigger or better. The question is which expert will convince the trier of fact at trial on the merits as to his/her opinion in this case.

The trial judge cannot judge the facts or weigh the evidence in a summary judgment proceeding — that is for the trier of fact. Even though the motorist who struck plaintiff admitted her fault, that does not mean there was only one tortfeasor or one cause of the accident in question. There is certainly the potential for comparative fault of others; and, any degree of comparative fault will defeat a motion for summary judgment. A finding of comparative fault requires a weighing of evidence, which the trial court is not allowed to do in a summary judgment proceeding — that is left to the trier of fact.

Should there be any issue as to the qualifications of the expert or his/her opinion in a summary judgment proceeding, that issue is to be flushed out and decided in advance via *Daubert/Foret* motion in limine. Such is not the case here. The experts in this case, and their opinions, were received by the trial court without objection in a summary judgment proceeding; and, when there are competing experts with contradictory opinions as to material facts, there are questions of material fact which defeat summary judgment. The trial judge is not allowed to weigh the evidence presented by the competing experts or weigh their credibility.

We must be careful to strictly follow the rules pertaining to summary judgment proceedings. Today's summary judgment is tantamount to a third type of trial. It is a trial by affidavit, wherein a litigant is denied two inherent and fundamental rights — the right to a day in court and a right to trial by jury. In this

case, plaintiffs' claim against the defendant/state was dismissed when the trial court weighed evidence by choosing one expert opinion over another, contrary to the law and jurisprudence pertaining to summary judgment proceedings.

I would affirm the court of appeal judgment and allow plaintiffs their day in court.

3